**KENNEDY et al. v. BEETS OIL CO.**

No. 14704—Opinion Filed Oct. 7, 1924.

Rehearing Denied Dec. 16. 1924.

**1. Appeal and Error—Theory of Case—Change on Appeal.**

A party who has presented his cause of action or defense to the trial court upon a certain theory is bound thereby throughout the subsequent stages of the cause.

**2. Mines and Minerals — Mining Partnership—Characteristics—Not Dissolved by Change in Personnel.**

The principal distinction between a mining partnership and an ordinary partnership is that in the former the delectus personae, or the right of a partner to say whether a new partner shall be admitted to the partnership, is absent. One of the most important results of this distinction is that a mining partnership, unlike an ordinary partnership, is not dissolved where the interest of a partner passes to another person or persons, as on the death of the partner or the transfer of his interest.

**3. Same — Lien of Partner for Overadvancement.**

A member of a mining partnership who advances more than his share of the money to operate or develop oil lands has a lien on his partner's share to the extent of his overadvancement on final accounting.

(Syllabus by Pinkham, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Okmulgee County; James Hepburn, Judge.

Action by the Beets Oil Company against J. H. Kennedy and C. W. Johnson. From judgment in favor of plaintiff, defendants bring error. Affirmed.

A. L. Emery, for plaintiffs in error.

Cochran & Ellison, for defendant in error.

Opinion by PINKHAM, C. This is an appeal from the judgment of the district court of Okmulgee county approving the report of the referee in this cause, and rendering a judgment in favor of the defendant in error and against the plaintiffs in error, from which judgment the plaintiffs in error have duly appealed to this court.

The defendant in error was the plaintiff and the plaintiffs in error the defendants in the trial court, and the parties will be referred to as they appeared in that court.

The material facts are as follows:

One George W. McClain was the original owner of a certain oil and gas lease and executed to various parties an assignment of certain interests in said lease. This assignment provided that the various parties had the interests set opposite their names in a well drilling or to be drilled on the said lease, and further provided that if the well should be a producing well, then all the parties should pay their proportionate part of the rig, casing, and equipment, and a meeting of all interested parties should be held for the purpose of selecting a trustee to take charge and operate and manage said lease and leasehold.

This assignment further provided that all expenses of all future operations on said lease should be borne by the parties as their respective interests appeared.

Thereafter certain parties mentioned in the said assignment conveyed to the defendants Kennedy and Johnson a total undivided one-thirtysecond interest in the lease by an assignment which contained no provision with reference to a well or future drilling.

Thereafter a paying well was found on the property within the terms of said first mentioned assignment and trustees were appointed to develop and manage said property, and thereafter all parties interested in the lease, with the exception of the defendants Kennedy and Johnson, agreed to incorporate, and turned their interests in the lease to the corporation, and accepted from the corporation stock in proportion to the interest they owned in the lease.

At the time the defendants Kennedy and Johnson became interested in the lease neither of them resided in the state of Oklahoma, and were not in this state. It appears that one E. A. Locke, who was interested in the lease, had been sent the money necessary to purchase the interest which they acquired, and that Locke had a

power of attorney to purchase the interest in the lease and pay out the money which the defendants Kennedy and Johnson had sent him, the said Kennedy and Johnson both being at the time residents of the state of Pennsylvania.

It further appears that at the time Locke purchased the interest for Kennedy and Johnson he advised them that there would be an assessment for the first well, and thereafter, and after the assessment was made, Kennedy and Johnson sent the money to Locke, who paid the same.

It further appears that certificates of stock were delivered to Locke for Kennedy and Johnson. but they refused to accept stock in the company in exchange for their interest in the lease. and refused to execute assignments, and Locke offered to return the certificates of stock which had been executed to the defendants Kennedy and Johnson. It appears that three trustees were elected, and constituted the president. vice-president. and secretary-treasurer of the Beets Oil Company, and active operations on the leasehold were prosecuted.

The Beets Oil Company, plaintiff, filed this action against E. A. Locke, J. H. Kennedy, and C. W. Johnson, as defendants, for the purpose of restraining Locke from disposing of the certificates of stock which had been delivered to him for Kennedy and Johnson. Locke filed an answer in the nature of a general denial, consented that the restraining order be made a temporary injunction. offered to return the stock, denied his agency, and thereafter made no further appearance in the case.

The defendants Kennedy and Johnson answered by alleging their refusal to accept stock in lieu of their interest; that the Beets Oil Company had taken possession of the leasehold without their consent or knowledge. and further alleged that:

"These defendants allege that the plaintiff corporation has been receiving, taking and converting to its own use the gas and oil and the proceeds thereof from the lands in the first paragraph described and will so continue to receive, take and convert to its own use the said gas and oil and proceeds thereof—all without any accounting to these defendants and to their loss and damage: that these defendants, with others who purchased interests in the said leasehold estate on the lands described in the first paragraph herein, were partners and jointly interested in the said property and in the funds derived from the sale of gas and oil and the plaintiff corporation succeeded only to the rights of these persons who by assignments conveyed their interests to the plaintiff; that the said plaintiff corporation and these defendants are now partners and jointly interested in the leasehold on the lands in the several paragraphs herein described. and mentioned, and are jointly interested in all of said property and funds herein mentioned."

The defendants prayed for an accounting and for the appointment of a receiver. A receiver was appointed and an accounting had. The referee found from the evidence that Locke had authority to purchase this lease. that he had authority to pay the assessment as agent of the defendants, and that he either had authority, or apparent authority. to act for Kennedy and Johnson in the development and management of the property, that although Kennedy and Johnson knew that development was being made upon. the lease they never made any objection to the same. The referee found from all the facts as shown by the evidence that the trustees and Beets Oil Company, who are operating the lease, were fully justified in assuming that Locke had ample authority to represent the defendants Kennedy and Johnson in the further development of this lease, and that Locke, acting or assuming to act for himself and Kennedy and Johnson, expressly authorized the further development of the lease in controversy.

The referee further found that from the bringing in of the first well and up to the 1st day of November. 1922, the working interest in said lease has produced a grand total income of $73,994.60, that the Beets Oil Company in compliance with the order of the court has filed with the referee two statements showing receipts and disbursements by reason of the operation of said lease up to the 31st day of July, 1922, showing a grand total expenditure of $151,-537.33.

The referee further found that certain items, aggregating $10,969.56, do not constitute a charge against the lease, but are purely administrative or corporate expenses, and that the proportionate part thereof, or one-thirtysecond, is not chargeable to the defendants, leaving a net charge against the lease of $140,567.67. that after deducting the revenues received by the Beets Oil Company for the working interest and for sales of the gas. and refunds, etc., amounting to $73.994.60. there is a deficit of $66,573.17, and that a one-thirtysecond of this amount is chargeable to the interest of the defendants Kennedy and Johnson, and amounts to the sum of $2,080.41.

The referee concluded as a matter of law

that the defendants Kennedy and Johnson had an undivided one-thirtysecond interest in the leasehold estate described, and that they are indebted to Beets Oil Company in the sum of $2,080.41, and recommend that judgment be rendered accordingly.

To the findings of facts and conclusions of law of the referee exceptions were given to each of the parties. The trial court overruled the exceptions taken by the defendants to the referee's report, approved the same, and rendered judgment that the plaintiff have and recover of and from the said defendants J. H. Kennedy and C. W. Johnson the sum of $2,080.41, and that the plaintiff has a lien in, on, and upon the said undivided interest of the said defendants in the said leasehold estate, and the said lien was ordered foreclosed, and the said interest in said leasehold estate sold to satisfy the judgment rendered.

The chief contention of counsel for defendants is that the judgment appealed from is erroneous because it was based upon the theory that a mining partnership existed between the plaintiff and the defendants, and that therefore the decision and judgment of the trial court should be reversed and judgment entered for the defendants, and against the plaintiff for "the value of all (that is, the one-thirtysecond part) the oil at the highest market value, and the value of the gas from the time the plaintiff first converted the same up to the date of judgment without any allowance to the plaintiff for expenses."

It will be seen, therefore, that the case turns upon the question of whether a partnership relation existed between the plaintiff and defendants so far as the lease in question is concerned.

Cases are tried upon the issues tendered by the pleadings.

The plaintiff's contention was that it was the owner and entitled to all interests in the lease in question, including the interests which stood in the name of the defendants, and that the defendants were entitled to stock in the plaintiff company in exchange for their interests by reason of an arrangement entered into by Locke as agent for the defendants.

The defendants denied this contention, denied the agency of Locke, and his authority, and alleged in their answer that the "plaintiff corporation and the defendants are now partners and jointly interested in the leasehold estates on the lands in the several paragraphs herein described."

The trial court adopted the theory of the defendants and their contention that the interests in the oil and gas mining lease in controversy which stood in the names of the defendants were not the property of the defendants, and appointed a receiver, and ordered an accounting for the partnership property as prayed for by the defendants.

Many decisions of this court have announced the rule to the effect that a party to an action, having presented his case or defense to the trial court upon a certain and definite theory, is bound thereby throughout the subsequent stages of said cause, and on appeal he is bound by the position and theory of his defense as assumed in the trial court. Horne v. Okla. State Bank of Atoka, 42 Okla. 37, 139 Pac. 992; Doggett v. Doggett, 85 Okla. 90, 203 Pac. 223; Herbert v. Wagg, 27 Okla. 672, 117 Pac. 209; Brooks v. Tyner, 38 Okla. 271, 132 Pac. 683; Hughes v. Kano, 68 Okla. 203, 173 Pac. 447; Board of Commissioners of Pottawattomie County v. Henderson, 66 Okla. 282, 168 Pac. 1007.

In the case of Yarwood v. Billings (Wash.) 72 Pac. 104, it was held:

"Where the theory on which a suit between partners for an accounting was tried was adopted at defendants instance and over plaintiffs objection defendant could not complain on appeal that such theory was erroneous."

Counsel for defendants do not question this well-established rule, but contend that the allegations or admissions of partnership contained in the answer of defendants were inconsistent with other portions of the answer in which liability to the plaintiff was denied, and state that the allegations of partnership in the answer were particularly inconsistent with the allegation "that they have never at any time consented to the management of the said leasehold estate by the plaintiff; that the plaintiff went into the possession of said leasehold estate and assumed the management thereof entirely without the knowledge or the consent of these defendants"; and counsel for defendants state that this latter allegation was made "on the theory that the parties hereto were not mining partners."

We think it clear the defendants took the position in the trial court that a partnership existed between the parties. We conclude that the plain, unambiguous allegations in defendant's answer "that the plaintiff corporation and these defendants are now partners," and their prayer for a receiver and an accounting because a partnership relation existed between them is not

denied by any other paragraph of said answer, and that as a matter of law after the partnership sustained a loss in the operation and development of their joint enterprise the defendants would be liable for their proportionate part of the expenses incurred in the development of the property.

The sharing of profits and losses is the principal criterion of a partnership. Higgenbotham v. Stanley, 36 Okla. 302, 128 Pac. 238.

It is not contended, as we understand the argument of counsel for defendants, that the funds expended by the plaintiff in development did not exceed the proceeds realized from the production in the amount found by the referee.

As before stated, George W. McClain was the original owner of the lease and sold undivided interests in it to various parties for the purpose, it seems, of raising money to drill a test well for oil or gas upon the land covered by it. The assignments which he executed and delivered to the purchasers of these undivided interests provided that "all expenses of all future operation on said lease shall be borne by the parties hereto as their respective interests may appear."

By accepting these assignments the assignees became mining partners with their coowner. It is contended that no such provisions were included in the assignments made to the defendants by certain original assignees. We think the defendants took their interests in this lease subject to the provisions contained in the original assignments, and that it was not necessary that these provisions be expressly included in subsequent assignments, or that the terms and conditions of the original assignments should be expressly referred to. When a mining partnership is once created it continues, and is not dissolved by the fact that one of the partners has disposed of his interest to some outside party.

What the defendants bought into when they acquired their interests in the lease in question was an undivided interest in a mining partnership, and thereby secured the rights and assumed the obligations which the well established rules governing such partnerships provide.

In the case of Barrett v. Buchanan et al., 95 Okla. 262, 218 Pac. 734, the subject of mineral partnerships was very fully discussed. It is said in the opinion in that case:

"As stated above, this arrangement cannot be called a partnership within the general law applying to partnerships, but is simply a term which has been applied to the relationship existing between joint owners of mining or oil property who have undertaken to develop the same in common and sharing in the loss or profits."

The opinion referred to quotes Thornton on the Law of Oil and Gas, section 355, as follows:

"If two or more owners of a mine unite in working it, without any partnership agreement, the act of working it together creates a mining partnership; and the same is true of two or more holding interest in a lease of mining property. 'Whatever may be the rights and liabilities of tenants in common of a mine not being worked,' said the Supreme Court of California, 'it is clear that when the several owners unite and cooperate in working the mine then a new relation exists between them, and, to a certain extent, they are governed by the rules relating to partnership. They form what is termed a mining partnership, which is governed by many rules relating to ordinary partnerships but which has also some rules peculiar to itself, one of which is that one person may convey his interest in a mine and business without dissolving the partnership'."

It is further contended that the cause was not tried upon its merits. The contention cannot be sustained. The question of partnership being disposed of nothing was left to be tried except the matter of an accounting.

The further contention that the provisions of the original assignments providing for the selection of a trustee were violated because three trustees were selected, is, we think, without merit.

"The several trustees of a single trust form but one collective trustee and therefore must execute the duties of the office in their joint capacity." People ex rel Moscovitz v. O'Loughlin, 140 N. Y. S. 488, 79 Misc. Rep. 650.

In 18 R. C. L. 1203, it is said:

"When members of a mining partnership cannot agree in its management those having a majority interest may control in all things necessary and proper for its operation. And an agreement entered into by persons owning a majority interest in a mine to manage its affairs as they or the majority of them shall determine is not illegal or void as against public policy."

In Barrett v. Buchanan, supra, it is held:

"A member of the mining partnership who advances more than his share of money to operate or develop oil lands has a lien on his partners' share to the extent of his overadvancement on final accounting."

The following cases support the rule an-

nounced: Ervin v. Masterman, 16 Ohio Cir. Ct. Rep. 62; Childers v. Neely, 47 W. Va. 70, 34 S. E. 828; Duryea v. Burt, 28 Cal. 569.

Upon the whole record, we think the judgment of the trial court was correct and should be affirmed.

By the Court: It is so ordered.