**FIRST NAT. BANK OF ADA et al. v. ELAM et al.**

No. 16985.   Opinion Filed July 26, 1927.

(Syllabus.)

**1. Pleading—Sufficiency of Petition on General Demurrer.**

The allegations of a petition, when challenged by a general demurrer, must be construed liberally in favor of the pleader, as such demurrer admits the truth of all allegations well pleaded, and if any facts are stated which entitle the pleader to any relief, the demurrer will be overruled.

**2. Appeal and Error—Sufficiency of Evidence—Review of Equity Case.**

In a case of equitable cognizance the appellate court will examine and weigh the evidence, but the findings and judgment of the trial court will not be disturbed on appeal because of the insufficiency of the evidence unless it is made to appear that such findings and judgment are against the clear weight of the evidence.

**3. Same—Error in Instructions and Interrogatories in Equity Case Immaterial.**

Where a jury is empaneled in a case of purely equitable cognizance and instructions given and interrogatories propounded to such jury, an error cannot properly be assigned that the court erred in its instructions and in propounding the interrogatories, and such specifications of error afford no ground for a reversal, since the whole issue and findings must be left to the determination of the trial court.

**4. Appeal and Error—Sufficiency of Evidence—Reformation of Instruments.**

Where plaintiff seeks reformation of a written instrument because of fraud, the evidence must be clear, convincing, and satisfactory to authorize a reformation, and in such action, where the record presents evidence satisfactory that the written mortgage was not, in fact, the contract actually agreed upon, but was the result of fraud, overreaching, or mistake, judgment will not be disturbed on appeal because there is conflicting evidence.

**5. Equity—Maxim of "Doing Equity"—Payment of Debt as Condition of Cancellation of Mortgage.**

In an action by the mortgagor to reform a real estate mortgage and for cancellation and removal of cloud from title under such mortgage by reason of a tender of the amount alleged due thereon, it is error to cancel such mortgage unless the mortgagor pay the amount found due thereunder, because of the rule "that he who seeks equity must do equity."

**6. Mortgages—Action to Reform and Cancel—Liability of Mortgagee for Failure to Release—Necessity for Bad Faith.**

In an action by a mortgagor to reform a real estate mortgage as to amount named therein and secured thereby, cancel the same by reason of a tender of the amount alleged due thereon and for the recovery against the mortgagee under sections 7641 and 7642, C. O. S. 1921, for the mortgagee's failure to acknowledge satisfaction of such mortgage, held, that, the statute being penal in its nature, a strict construction thereof should be had and no recovery allowed for such failure unless it clearly appear that the mortgagee was not acting in good faith in its claim of a balance due from the plaintiff under such mortgage.

**7. Equity—Jurisdiction to Administer Complete Relief.**

A court of equity which has obtained jurisdiction will retain such jurisdiction for the purpose of administering complete relief and doing entire justice with respect to the subject-matter, even to the extent of adjudicating matters of a legal cognizance.

Commissioners' Opinion, Division No. 1.

Error from District Court, Pontotoc County; J. W. Bolen, Judge.

Action by Cecelia Elam and Fred Elam against the First National Bank of Ada and J. I. McCauley to reform real estate mortgage, cancel the same by reason of a tender of amount due thereunder, and for recovery of penalty under section 7642, C. O. S. 1921, for failure to release same, and cross-action on part of defendants on notes and to foreclose mortgages. Judgment for plaintiffs as prayed; judgment in part on cross-action by defendants. Defendants appeal. Reversed, with directions.

Robert Wimbish and W. C. Duncan, for plaintiffs in error.

Orel Busby and L. H. Harrell, for defendants in error.

LEACH, C.   In the court below Cecelia Elam and Fred Elam, husband and wife, defendants in error, were plaintiffs, and the First National Bank of Ada and J. I. McCauley, liquidating agent, plaintiffs in error, were defendants. The parties will be referred to herein as plaintiffs and defendants, as they appeared below.

On the 14th day of January, 1925, plaintiffs filed their petition in the district court of Pontotoc county, setting up three causes of action, which, in substance, are: (1) That Cecelia Elam, a three-quarter blood Chickasaw Indian, was the allottee, together with other lands, of a certain tract of

80 acres; that the husband, Fred Elam, became indebted to D. P. Harrison in the sum of $900; that Harrison assigned this note to the First National Bank of Stonewall; that prior to that time plaintiff Cecelia Elam had mortgaged all of her lands, except the 80 acres referred to, to the First National Bank of Ada; that on the 15th day of February, 1924, Fred Elam with an agent of the First National Bank of Ada came to the home of Cecelia Elam with a note in the sum of $1,074.50, and a mortgage reciting a consideration of $1,074.50; that it was represented to her that the mortgage was on 80 acres of her allotment, and was for $1,074.50 only; that she was induced to execute said mortgage believing the same was only for the sum of $1,074.50, and that she only learned a short time ago that the bank had written in said mortgage the sum of $7,292.53 in addition to the amount of $1,074.50, and was attempting to claim a mortgage against the 80 acres for the total sum of $8,366.93, and that she is entitled to have the same declared a mortgage for only the sum of $1,074.50, which would be according to and would represent the intent of the parties to the said instrument, and prayed that the court decree said mortgage to be security for only the sum of $1,074 50, which petition was duly verified.

The second cause of action was based upon a tender of the amount necessary to pay the $1,074.50 mortgage and note, and defendants' refusal to accept the same and release the mortgage, and prayed that said mortgage be canceled and the security discharged because of the defendants' refusal to release the same,

The third cause of action prayed for damages under section 7642. C. O. S. 1921, for defendants' refusal to release said mortgage.

Defendants demurred to the petition on the grounds that it did not allege sufficient facts to state a cause of action, and that there was a misjoinder of plaintiffs, which demurrer was by the court overruled, and defendants excepted.

Answering, the defendants denied that they made any false representations to the plaintiff to induce her to sign the mortgage; that she understood the terms of the mortgage, or by the use of reasonable diligence might have understood the same. They denied that the amount of money tendered was sufficient to satisfy the indebtedness due and secured by said mortgage, and denied that they were liable in any sum as penalty for failure to release the same.

By way of cross-petition, defendants alleged that plaintiffs executed to the defendant bank their certain promissory note for $7,342.43, due on November 24, 1924, with interest at ten per cent. and for $10 and ten per cent. of the amount as attorney's fees, if said note should be placed in the hands of an attorney for collection, and alleged that, as security for said note, executed their real estate mortgage on the 160 acres of land (not the land described in plaintiff's petition); they admit certain payments on the above note, and ask for judgment for the full amount including $650 attorney's fees, for foreclosure, etc.

For a second cause of action the defendants allege that the plaintiffs requested defendants to furnish them money to pay the $900 note due the Stonewall bank, and to furnish them additional money, which defendants agreed to do, and did, upon the condition that the 80 acres described in plaintiffs' petition should stand as further security for the previous note sued upon and set out in defendants' first cause of action, in addition to the note for $1,074.50, and pray a foreclosure against the said 80 acres. Defendants alleged that there is still due on the small note $891, with interest and attorney's fees.

The issues were submitted to a jury, who found for the plaintiffs on all their three causes of action, and their verdict and findings were adopted by the court. The jury found that the mortgage in question was given to secure a sum of $1,074.50 only; that a tender of said sum to release said mortgage was made, and the mortgagee refused said tender, and that thereby said lands were discharged of said mortgage, and the security released from the lien; that by reason of the refusal to release plaintiffs were entitled to damages as provided by statute, and assessed the same at $1,385.20. The court rendered judgment in said cause in favor of the defendants the First National Bank of Ada and J. I. McCauley, liquidating agent, on their second cause of action for the recovery of the sum of $839, together with interest in the further sum of $59.34, balance due on the note for the sum of $1.074.50, but further adjudged and decreed that the mortgage executed to secure the same should be canceled by reason of the tender made by the plaintiffs to the defendants thereon, and entered judgment canceling said mortgage of record. The court rendered further judgment in said cause in favor of the defendants upon their first cause of action and against the plaintiffs

for the sum of $6,405, principal, and $337.40 interest, together with the sum of $350 attorney's fees, and ordered a foreclosure and sale of the lands prescribed in defendants' first cross-action, and deducted from said named amounts and sums the sum of $1,385.-20 adjudged and found due defendants; said last amount being the sum and amount found and adjudged due plaintiffs by defendants on plaintiffs' third cause of action.

From the judgment so rendered the defendants appeal and argue their numerous assignments of error under five propositions, the first being:

"The plaintiffs' petition did not state a cause of action against the defendants, and the defendants' demurrer should have been sustained."

Upon the above proposition defendants urge that plaintiffs' petition, as to the first cause of action, fails to allege facts sufficient to constitute a cause of action, in that it fails to allege the fraud complained of, that she, Cecelia Elam, relied upon any false representations, and that it fails to allege any damage.

From the record it is shown that Cecelia Elam was originally the only plaintiff, and that subsequent to the filing of plaintiff's petition, Fred Elam, her husband, was made a party plaintiff.

Plaintiff Cecelia Elam alleged in her first cause of action that she is an enrolled three-quarter blood Chickasaw Indian; and that there was allotted to her certain lands, describing them; that Fred Elam, her husband, became indebted to D. P. Harrison, the father of the plaintiff, in the sum of approximately $900; that said note was secured by a chattel mortgage on some cattle and mules; that said note had been sold and assigned by her father to the First National Bank of Stonewall, Okla.; that thereafter, when said indebtedness came due, the bank was insisting upon the payment of same, and threatened to foreclose the chattel mortgage and sue D. P. Harrison and Fred Elam; that said D. P. Harrison came to the plaintiff during the forepart of the month of February, 1924, and asked plaintiff to make some arrangements to help raise the money to pay off said note to the First National Bank of Stonewall; that plaintiff at that time had already mortgaged to defendant First National Bank of Ada all of her allotment except the certain 80 acres described; that Fred Elam, husband of plaintiff, also desired to borrow a little more money at that time, and plaintiff was induced to

agree to execute a mortgage on the lands described. That on or about the 15th day of February, 1924, the husband of this plaintiff, Fred Elam, together with an agent and employee of the First National Bank of Ada, Okla., came to the home of this plaintiff with a note in the sum of $1,074.50 for plaintiff to sign, which represented the indebtedness of the said D. P. Harrison and the said Fred Elam owed the bank of Stonewall, Okla., and the added sum which said Fred Elam was borrowing, the exact amount of which is unknown to your plaintiff. That said note was made payable to the First National Bank of Ada, Okla.; that at the time of the presentation of said note, a mortgage was also presented to this plaintiff by an agent of the said bank acting as notary public, a copy of which mortgage is attached hereto, and made a part hereof, and marked "Plaintiffs' Exhibit A"; that said mortgage stated that for and in consideration of the sum of $1,074.50 plaintiff was executing said mortgage on the lands above described to secure said note; that your plaintiff does not understand land descriptions, and asked what lands the mortgage covered, and was told by the agent and employee of said bank that the same was on 80 acres of her allotment, but that said mortgage did not include the 20 acres on which the plaintiff lived at that time; that your plaintiff read the words at the top of said mortgage, which stated that the same was being executed for the sum of $1,074.50 and was represented by a note in said sum, and understood that she was executing a mortgage for said sum; that the money represented by said note constituted the only consideration for the execution of said mortgage; that only a short time ago she learned for the first time the agents and employees of said bank had written into said mortgage a proviso that there was a balance due said bank in the sum of $7,292.-43 in addition to said $1,074.50, and that the said bank was attempting to claim a valid existing mortgage against the 80 acres of land above described, as security for a total of $8,366.93.

Plaintiff further alleges that she relied upon the truth of the representations of the agent and employees and notary public of said bank that said mortgage was only for $1,074.50, for which she executed a note at that time, and no other notes, and received no other compensation; that she was induced to execute said mortgage, believing the same was only for the sum of $1,074.50, and that without said misrepresentations on the part of the agents and employees of

the said First National Bank of Ada, Okla , she would not have executed said mortgage.

Plaintiff would further show that in view of the fact that said First National Bank of Ada, or its successors, are attempting to claim a mortgage against said property as security for the sum of $8,366.93, that she is entitled to have the same declared a mortgage only for said sum of $1,074.50, which would be according to, and would represent, the intent of the parties to said instrument.

Wherefore plaintiff prays judgment of this court declaring said mortgage to be security for said sum of $1,074.50, as set out therein.

The general demurrer filed by defendants to plaintiff's petition had the effect of admitting the allegations set forth in the petition.

"It is not necessary that the pleading allege fraud in direct terms, but a pleading may be sufficiently made by stating facts from which fraud may be implied." Concordia Fire Ins. Co. v. Wise, 114 Okla. 254, 246 Pac. 595.

"The rule that fraud cannot be predicated on a failure to disclose facts where the information is as accessible to one party as to the other, and the truth may be ascertained by the exercise of reasonable diligence, does not justify a resort to active deceit or fraud, and hence does not apply when a party, in addition to nonforeclosure, uses any artifice to throw the other party off his guard and to lull him into a false security. Therefore, each party to the contract must take care not to say or do anything tending to impose upon the other. The concealment becomes a fraud where it is affected by misleading and deceptive talk, acts, or conduct, or is accompanied by misrepresentations, or where in addition to a party's silence there is any statement, word or act or conduct on his part which tends affirmatively to a suppression of the truth, or to a covering up or disguising of the truth, or to a withdrawal or distraction of a party's attention from the real facts; then the line is overstepped and the concealment becomes a fraud." R. C. L. vol. 12, sec. 80.

Also, in 2 C. J. p. 1228, sec. 98, we find the following:

"The term 'alteration,' being usually applied to the act of a party to the instrument, imports some fraud or improper design to change its effect. The fraudulent purpose is a conclusion of law from the fact that the change is wrongfully made."

In the case of Revel v. Pruitt, 42 Okla. 696, 142 Pac. 1019, it is said:

"It is a well-established principle of pleading that there need be no direct allegation of a fact if the same otherwise sufficiently appears, or of a fact which is necessarily implied from other averments in the petition."

In the case of Gourley v. Jackson, 116 Okla. 30, 243 Pac. 243, it is said:

"The allegations of a petition, when challenged by a general demurrer, must be construed liberally in favor of the pleader, and such demurrer admits the truth of all allegations well pleaded, and if any facts are stated which entitle the pleader to any relief, the demurrer will be overruled."

See, also, Dies v. Bank, 100 Okla. 205, 229 Pac. 474; Folsom v. Mid-Continent Life Ins. Co., 94 Okla. 181, 221 Pac. 486; Schreiner v. City Nat. Bank, 76 Okla. 76, 183 Pac. 905; Nale v. Herstein, 84 Okla. 35, 202 Pac. 284; Bush v. Mo. State Life Ins. Co., 86 Okla. 182, 207 Pac. 317; Threadgill v. Board of Education, 85 Okla. 121, 204 Pac. 1100.

"Where a pleading states any facts upon which the pleader is entitled to any relief under the law, a general demurrer should not be sustained." Sharp Lumber Co. v. Kansas City Ice Co. et al., 42 Okla. 689, 142 Pac. 1016; Cassidy v. Rose, 108 Okla. 286, 236 Pac. 591; Burch v. Southern Pac. Co. (Nev.) 104 Pac. 225.

Although plaintiff's petition is subject to criticism, in that it is somewhat indefinite, subject to a motion to make more definite and certain, yet, taken as a whole, and applying the rules laid down in the cases above cited, and similar ones, we conclude and hold it good as to the first cause of action against the demurrer filed by defendant, and find no error in the ruling of the trial court accordingly.

Under defendants' second and third propositions they urge and argue the following assignments of error:

"(2) The trial court erred in not instructing the jury to return the verdict for the plaintiff in error.

"(4) The trial court misdirected the jury as to the law of the case.

"(5) That the trial court erred in submitting to the jury certain special interrogatories.

"(6) The trial court erred in refusing to give the jury certain requested instructions asked for by the defendants.

"(8) That the court erred in refusing to instruct the jury at the close of the evidence offered by the defendants in error to return a verdict for the plaintiffs in error."

This action being one primarily for the reformation of a real estate mortgage, it is one of equitable cognizance, the other issues being dependent upon the first cause of action; therefore, the verdict and findings of

the jury were merely advisory to the court. In an action of this character, purely equitable in its nature, the trial court may adopt or reject the findings and verdict of the jury, as it sees fit, in that the whole matter must eventually be left to the court to determine, and errors in instructions to the jury, or in propounded interrogatories, are not grounds of appeal.

"In cases of equitable cognizance, while the judge may call in a jury or consent to one, for the purpose of advising him upon the questions of fact, he may adopt or reject its conclusions, as he sees fit, and the whole matter must eventually be left to him to determine, and instructions to the jury furnish no grounds of error upon appeal. It was not only the right, but the duty, of the court to determine all questions of fact as well as law." Kentucky Bank & Trust Co. v. Pritchett et al., 44 Okla. 87, 143 Pac. 338; Barnes et al. v. Lynch et al., 9 Okla. 157, 59 Pac. 995.

"The judge may call a jury, or consent to one, for the purpose of advising him on the questions of fact, and he may adopt or reject their conclusions, as he sees fit, for the whole matter must eventually be left to him to determine; and instructions offered by the parties furnish no ground of error on appeal. It is not only the right but the duty of the court, in such cases, to fully determine all questions of fact, as well as of law." Galer et al. v. Berrian et al., 43 Okla. 303, 140 Pac. 155.

"In a case of equitable cognizance, the verdict of the jury being merely advisory, to be adopted or rejected by the court, alleged errors in the instructions to the jury do not afford a reason for reversal." Tobin v. Gantt, 78 Okla. 73, 189 Pac. 170.

"Where a jury is empaneled in a case purely of equitable cognizance to aid the court in determining the facts, it is entirely within the discretion of the court as to what interrogatories the court propounds to such jury; and error cannot properly be assigned that the court erred in propounding such interrogatories, or that the interrogatories propounded were not germane to the issues involved." Prentice v. Freeman, 76 Okla. 260, 185 Pac. 87.

From the numerous holdings of this court upon the above proposition, it will be observed that the assignments of error and the defendants' second and third propositions are not matters for consideration in this cause, and will not be discussed further except as they may arise in other assignments of error.

Under defendants' sixth proposition the defendants complain of the admission and rejection of testimony, and rather briefly

call attention to four objectionable phases of the evidence, one being the admission of notary's record. In response to this we call attention to section 7867, O. O. S. 1921, which requires notaries to keep a fair record of their official acts and to give a certified copy thereof, etc. Also, section 654, O. O. S. 1921, which provides that the books and records required to be kept by a public officer may be received in evidence. We do not find, from an examination of the record and the evidence complained of, any material error in the admission or rejection of evidence which would materially affect the defendants' substantial rights, or likely affect the final decision. In an equitable case of this character, triable before the court, a wider latitude in the matter of evidence is admissible than in purely law actions.

The defendants' fourth, fifth, and seventh propositions are:

"(4) The plaintiffs were not entitled to recover under any phase of this case on their second and third causes of action.

"(5) The judgment of the trial court was contrary to law and the evidence.

"(7) The trial court should not have permitted the verdict of the jury to stand, and should not have rendered the judgment that he did render thereon"

—and involved purely one question, although covering several assignments of error, and will be considered together, under the general proposition: "The judgment of the trial court was contrary to law and the evidence and not supported thereby."

Plaintiffs' first cause of action was one for the reformation of a real estate mortgage. The same being an equitable action, a review of the evidence and entire record is proper. Marshall v. Grayson, 64 Okla. 45, 166 Pac. 86.

The original instrument, the mortgage, involved in this action, is a part of the record in this case, the front or first page of which, after reciting the date and names of the parties thereto, contains the following:

'The first party for and in consideration of the sum of $1 074.50 to him in hand paid, * * * does grant, bargain, sell and convey unto the second party, * * * all of the following described real estate (describing it), to have and hold the same, the second party, his heirs, assigns, * * * and first party warrants his title, * * * provided always, and this instrument is made, executed, and delivered upon the following conditions."

On the same sheet of the instrument, except it is on the back or opposite side there-

of. beginning near the top, appears this entry, partly printed and partly typewritten:

"First: Said first party is justly indebted unto said second party in the principal sum of eighty-three hundred sixty-six and 93/100 ($8,366.93) dollars, in lawful money of the United States, being for a loan thereof made by said second party to said first party, and payable according to the tenor and effect of two certain promissory notes, numbered, executed, and delivered by the said first party, * * * payable to the order of the First National Bank of Ada, Okla., one note for $1,074.50 dated February 15, 1924, due and payable November 15, 1924, drawing interest at the rate of ten per cent. per annum after maturity and a balance due of $7,292.43 on a note dated November 24, 1923, due and payable on November 24, 1924, drawing interest at the rate of 10 per cent. per annum after maturity."

Thereafter follows considerable printed matter respecting insurance, default, etc., and near the bottom of the page appears the signatures of the parties. On the next sheet of the mortgage appears the notary's acknowledgment, there being two sheets of the mortgage, the first sheet being partly filled in and taken up on both sides of the same, while the second sheet contains only the notary's acknowledgment. The typewritten dates, names of the parties, county and state. and the words "one thousand seventy-four and fifty/100 ($1,074.50)," shown on the front part of the first page or sheet is underscored in red, while the remainder of the typewritten part of the mortgage on the opposite side of the page or sheet is not so underscored.

From an examination of the original instrument we do not say that the same is one especially prepared in its form to catch the unwary, as is indicated in the brief of defendant in error, but we do say that one executing a note for the same amount, $1,-074.50 as is shown on the front or first part of the mortgage, and finding the same amount or sum incorporated in the first page, might easily, without a careful inspection of the instrument, overlook the other or different sum incorporated on the opposite side of the same sheet near the top thereof, and if the evidence of the plaintiffs is believed then they are apparently not guilty of negligence in overlooking the additional or different sum specified in the instrument, if such additional sums and amounts were. in fact, written at the time they executed the same. The plaintiffs had on the day previous to the execution of the mortgage involved in this action executed a mortgage very similar in character, al-though not identical in form, the first mortgage so executed was unsatisfactory to defendants in its wording and description of the amount secured, according to the evidence of the defendants, and for that reason they had. the second mortgage prepared, which second mortgage is the one here in question. The notary who took the acknowledgment to the first mortgage, a different notary taking the latter, recited and set forth in his official record that the same secured only the sum of $1,074.50. In his evidence he indicates that he made such record under the belief that the mortgage secured only that sum and was unable to say whether the mortgage contained a description of the larger note or not. We call attention to this merely to show that the notary was misled by the form and wording of the instrument, or that the same did not contain any item other than the note executed simultaneously with the mortgage. The plaintiffs object and complain of that part of the mortgage set out on the back of the first page, near the top, where the indebtedness by the first party to the second party is fixed at $8,366.93. and reference is made to a balance due of $7,292.43 on a note dated November 24, 1923, and say that it was never contemplated or intended in the execution of the mortgage to secure any sum due on the note previously executed and dated November 24, 1923; that the mortgage only secured the note executed at the same time of the execution of this mortgage. It appears from the evidence and record that the certain note referred to for the sum of $7,292.43, dated November 24, 1923, was secured by a mortgage previously executed by the makers on 160 acres of other lands owned by the plaintiff Cecelia Elam, which mortgage was foreclosed in this action. and that the parties, plaintiffs and defendants. had had previous dealings and banking relations. The plaintiffs and one other witness testified that at the time of the execution of the particular mortgage in question, it did not contain any description of the previously executed note dated November 24. 1923, which evidence was contradicted by that of the defendants. The court in its instructions to the jury submitted such question, and the jury and court must have had such evidence in mind in arriving at their verdict and judgment. Defendants in error assert that the defendant made no representations to the plaintiffs as to the indebtedness or amounts secured by the mortgage, which assertion we do not think is entirely borne out by the record. They further say that if the notary or agent

made any statements to the plaintiffs, which is denied, then it was not within the authority of such notary or agent to make any such representations or statements.

We call attention to section 287, C. O. S. 1921, and the case of Knudson v. Fenimore, 69 Okla. 3, 169 Pac. 478, in which case it was said:

"A general allegation of authorized agency will be presumed to be an agency with full powers legally conferred, and failure to deny such allegations under oath is equivalent to an admission in the answer and no further proof of agent's authority is required."

The plaintiffs allege agency in their petition, which was not denied under oath in the answer of the defendant.

We are not unmindful of the cases cited in brief of plaintiffs in error, and similar cases in this court, laying down the rule that:

"A person signing an instrument is presumed to know its contents, and one in possession of his faculties and able to read and having an opportunity to read a contract which he signs, if he neglects and fails to do so, cannot escape its legal liability, for the reason that at the time false representations were made to the effect that the writing contained the verbal understanding of the parties"

—which is the correct rule of law as applied to the facts in the cases cited, and we do not mean hereby to in any manner lessen or find fault with such rule of law, but there are exceptions to the rule, and the same will not apply in all actions relating to reformation or defenses on written instruments.

It appears from the evidence that plaintiffs could read and write, yet they had, evidently, but little business experience, and had been transacting some banking business with the defendant, and had confidence and relied upon the defendants.

In the recent case of Gault v. Spears, 125 Okla. 126, 256 Pac. 515, the same being an action to reform a written instrument, wherein the plaintiff sought to avoid certain liabilities incorporated in the instrument which he had signed, on the ground that the other party practiced fraud in incorporating in such instrument different obligations from that agreed upon between them, and which instrument he failed to read, this court, in sustaining the judgment of the lower court granting the relief, quoted with approval the following:

"In 23 R. C. L. pp. 351, 352, sec. 48

the general rule applicable here is stated as follows:

"'Where one party relies on the other to draw the instrument according to the terms of the agreement, and the other party or his agent, or the scrivener selected by him, either through mistake or fraud, fails to do so, the fact that the first party failed to read over the instrument before signing is not such negligence as will prevent his getting relief by reformation.'

"In Archer et al. v. California Lumber Co., 24 Ore. 341, 33 Pac. 526, the Oregon court said:

"'When one party to a contract intrusts to and depends upon the other party to have the contract, as made by them, reduced to writing, the party intrusted with such duty must act with utmost good faith; and if the contract, as written, is not the one which was verbally agreed upon, and the party was induced by the confidence reposed in the other to execute the contract as written, believing it expressed the real contract made, equity will not permit it to stand'."

In Gault v. Spears, supra, and in the case of Summers v. Alexander, 30 Okla. 213, 120 Pac. 601, we find the following:

"Where it is sought to enforce a contract, and a plea of fraud is interposed, the defense will be sustained, even though the defendant may have been wanting in ordinary prudence in relying upon the representations of the other contracting party as to the tenor or contents of the writing; the rights of innocent parties not intervening. They might still insist that it was not their contract."

See, also, In re Spann, 51 Okla. 309, 152 Pac. 68; Bostick v. Mutual Life Ins. Co., 116 Wis. 392, 89 N. W. 538, 92 N. W. 246, 67 L. R. A. 705, and cases there cited.

"The real intention of the parties, either as shown upon the face of the writing or as disclosed by extrinsic evidence, must govern in equity." Rosebaugh et al. v. Jacobs, 83 Okla. 211, 201 Pac. 245; Haynes et al. v. Gaines et al., 76 Okla. 268, 185 Pac. 74.

"A wide latitude is allowed in cases of fraud and circumstances altogether inconclusive, if separately considered, may, by their number and joint operation, especially when corroborated by moral coincidences, be sufficient to constitute conclusive proof." Wingate v. Render, 58 Okla. 656, 160 Pac. 614.

This court in the case of Bottoms v. Neukirchner, 29 Okla. 104, 116 Pac. 434, being a suit to set aside and cancel a deed on the ground of fraud, speaking through Mr. Justice Kane, said:

"Fraud must be shown and proved at law.

In equity it suffices to show facts and circumstances from which it may be presumed."

And further in the same case cited with approval the following:

"It is not safe to undertake to define what degree or kind of proof will justify a court of equity in granting relief against fraud, for the proof must satisfy the conscience of the court, and no man would deem it prudent to attempt to define the extent of that indispensable qualification in a judge or a court." Armstrong v. Lackman, 84 Va. 726, 6 S. E. 129.

Some of the cases deal with the quantum of proof necessary to reform. In 23 R. C. L. 367, this general statement is made:

"In attempting to lay down general rules as to the quantity, quality, and kinds of evidence which must be adduced, the courts have employed many and varying expressions. It is said that the proof must be 'very clear,' 'clear and satisfactory,' 'entirely clear and most satisfactory,'" and so on; but closes by saying: "When the mind of a judge is entirely convinced upon any disputed question, whether of fact or law, he is bound to act on the conviction. Relief will not be denied merely because there is conflicting testimony."

We have carefully read the entire evidence and record in this case, and while the evidence in support of plaintiffs' first cause of action is to some extent circumstantial and conflicting, yet we think the evidence is sufficient to support the findings and judgment of the court. The court and jury heard the evidence, and we are unable to say that the judgment of the lower court holding the mortgage was to secure only the sum of $1.074.50 is against the clear weight of the evidence.

Plaintiffs in their second cause of action allege and say that they made a tender to the defendants of the amount due under the mortgage set forth in their first cause of action, and demanded a release of the same, and that by reason of the refusal of the defendants to release said mortgage, they are entitled to have the same canceled of record, and their title quieted. The plaintiffs and the trial court were evidently of the opinion, by reason of the instructions offered and submitted, that the tender of the amount due under the mortgage had the effect of releasing the mortgage lien even though the tender be not kept good, which is the general rule of law and holdings of courts in those states where a real estate mortgage is only a lien, and the mortgagee has no legal title to the land described, as is the rule in this state, that the uncondi-

tional tender of the amount due under a mortgage releases the lien of the mortgage even though the tender is not kept good, which is, apparently, the rule in this state where no affirmative relief is asked by mortgagor; Kortright v. Cady, 21 N. Y. 343, 78 Am. Dec. 145, being the leading case on that point. Plaintiffs in their answer brief cite in support of the above proposition, and as authority for the holding of the court in the case at bar, the case of Smith Wogan & Co. v. Bice, 34 Okla. 294, 125 Pac. 456, which affirms the above rule, but is not applicable to the instant case, for the reason that the case cited is one relating to chattel mortgages, in which a different rule of law is applied, and the facts are not as in the instant case. An equally well-established rule, and an exception to the rule above stated, is that in equity cases, such as the one at bar, asking for a reformation of a mortgage, and for affirmative relief, canceling the same and removing a cloud upon title, the plaintiff is not entitled to have such mortgage canceled and affirmative relief granted unless the mortgagor or the party asking affirmative relief tenders the amount due under such mortgage. The court being one of equity and the plaintiff seeking equity must offer to do equity. One of the ear'iest and leading cases upon this point is Werner v. Tech, 127 N. Y. 217, in which it is said:

"Where such tender is made for the purpose of basing upon it a demand for affirmative relief, the principle that he who seeks equity must do equity compels the mortgagor to keep the tender good, before it would allow him to maintain a suit to destroy the lien of the mortgage on account of a tender and refusal."

Ruling Case Law, vol. 26, p. 645, announces the following rule:

"Where a tender is made for the purpose of basing a demand for affirmative relief on it, the rule stated in the preceding paragraph does not apply, but a different rule founded on the principle that he who seeks equity must do equity is called into action, and requires the tender to be kept good. Tuthill v. Morris, 81 N. Y. 94; Werner v. Tech, 127 N. Y. 217, 27 N. E. 845, 24 A. S. R. 443; Knudson v. Fenimore, 69 Okla. 3, 169 Pac. 478."

The Supreme Court of this state has affirmed the above rule in the case of Whitehead v. Stevens, 54 Okla. 337, 152 Pac. 445, and we quote from the syllabus of that case as follows:

"He who seeks equity must do equity. Where, in an action to foreclose a mortgage, it appears that one of the defendants had purchased the mortgaged property and assumed the payment of the mortgage, and he

files a cross-petition in a foreclosure action, setting up that the mortgagee is estopped by a former judgment, but is nevertheless harassing him with actions, and asking that his title be quieted, the mortgage canceled, and the mortgagee restrained from bringing any further actions thereon, but he makes no offer to pay what is justly due on the mortgage, held, the trial court committed no error in refusing him such affirmative relief."

Section 310, C. O. S. 1921, on Tender, provides:

"When a tender of money is alleged in any pleadings, it shall not be necessary to deposit the money in court when the pleading is filed, but it shall be sufficient if the money is deposited in court at trial, or when ordered by the court."

The plaintiffs in this case should have complied with the above rule and offered to pay forthwith upon order of the court, as a grounds for relief, the amount found due on the note secured by the mortgage. The plaintiffs in this case having asked affirmative relief, it was incumbent upon them, in their pleading or at the trial of said cause, to tender or offer to pay upon order of the court the amount found due under the mortgage, and the court should have ordered a foreclosure of the mortgage as reformed unless the plaintiffs paid the amount due thereon, and to that extent we find that the trial court erred in its judgment in this cause, holding that the tender did not have to be kept good in order to entitle plaintiffs to a cancellation of the mortgage.

The plaintiffs, in their third cause of action, sought to recover the penalty provided for under sections 7641 and 7642, C. O. S. 1921, which right was dependent upon the reformation of the mortgage as prayed for in plaintiff's first cause of action. Because this action may be based upon a statute does not deprive the court of its equity power in the final disposition of this issue. Equity, having once acquired jurisdiction over the issue, may determine purely legal rights which otherwise would be beyond its authority.

"Where a court of equity has obtained jurisdiction of the controversy for any purpose, it will retain jurisdiction for the purpose of administering complete relief, and it may for this end determine purely legal rights which otherwise would be beyond its authority." Murray et al. v. Speed. et al., 54 Okla. 31, 153 Pac. 181.

"Where a court of equity assumes jurisdiction of the controversy on some grounds other than the accounting involved, it will, as a general rule, where an accounting is necessary for full settlement of the controversy, proceed to decree it, and will settle the whole controversy, even to the extent of adjudicating matters of purely legal cognizance." Probst et al, v. Bearman, 76 Okla. 71, 183 Pac. 886.

See, also, Guaranteed State Bank of Durant v. D'Yarmett et al., 67 Okla. 164, 169 Pac. 629; DeRoberts v. Town of Cross, 23 Okla. 888, 101 Pac. 1114; Cook v. Warner, 41 Okla. 781, 140 Pac. 424.

We have examined the entire evidence and record in this case with a view of determining the liability of the defendants herein upon plaintiffs' third cause of action. The petition of plaintiffs and the evidence in this cause disclose and show that the plaintiffs made arrangements to borrow and did borrow temporarily the money sufficient to make a tender to the defendants of the amount which they claimed was due under the mortgage sued upon, and the record shows that such tender was not kept good, and the money borrowed was returned immediately to the parties from whom it was borrowed, and plaintiffs have from time to time made small payments on the small note. We call attention to this with a view and for the purpose of showing that the plaintiffs were out the use of their money. There was a controversy as to the amount secured under the mortgage sought to be reformed by the plaintiffs. The issue therein involved and decided, that is, the reformation of the mortgage, might have well been decided, as it was, without the finding of any willful intent on the part of the defendant to injure or do the plaintiffs any injustice.

The statute under which the plaintiffs seek to recover judgment, because of its penal character, should be strictly construed, and a mortgagee not rendered liable thereunder should he in good faith, having, as he may believe, real substantial grounds for contesting the facts of payment, refuse to release the mortgage. The Supreme Court of this state, in the case of Smith-Wogan Co. v. Bice, supra, lays down the above rule, and in that opinion reversed the cause because the following instruction relating to the question of recovery under a similar statute was not given at the request of the defendant:

"If you find from the evidence that there was a dispute or controversy between plaintiff and defendant as to the amount due defendant, and you find that defendant has and does in good faith claim a balance due from plaintiff, you are instructed to return a verdict for the defendant."

In the case of Bank of Indiahoma v. Carr,

72 Okla. 262, 180 Pac. 856, the same being a case to recover damages for failure to release a judgment, the court there quotes with approval the case above decided, and cites numerous decisions in line with the same holding.

In the case of Bullington v. Lowe, 94 Okla. 234, 221 Pac. 502, the same being an action involving a similar issue as herein, the plaintiff sought to have a deed decreed a mortgage and recover penalty for failure to release the same, in which case the court reiterated the rule herein laid out, in that a strict construction should be made upon the statute, and held that no recovery could be had in that cause because the instrument was a deed in form.

In the case of American National Bank v. D. J. Jorden et al., 125 Okla. 151, 254 Pac. 706, this court again enunciated the rule as herein indicated, and refused to sustain a recovery under the statute.

We are not unmindful of the findings herein sustaining plaintiffs' plea for the reformation of the mortgage, but do not by reason of such holding necessarily find that the defendant was acting in bad faith in its defense, or that the evidence and facts warrant the recovery of the amount claimed against the defendants by reason of their failure to release the mortgage.

From an examination of the entire record and the evidence, we are constrained to say and find that the record does not justify a conclusion that the defendants were not acting in good faith in claiming a balance due from the plaintiffs, and applying the equity rules hereinbefore enunciated, we think it would be inequitable and unjust to permit and allow the plaintiffs in this cause to recover from defendants the sum of $1,-374.30 for failure to release the mortgage, thereby recovering a much greater sum than was originally found due under the mortgage, and thereby satisfying not only the amount due under that mortgage but under the holdings of the court deducting the remainder from another note due by the plaintiffs to the defendants. We conclude, therefore, and hold, that the judgment of the court granting to the plaintiffs the sum of $1,374.30, for failure to release the mortgage, is, and was, erroneous, and is contrary to the weight of the evidence in this cause, and is inequitable and not warranted by the record.

The defendants further complain of the action of the trial court in the matter of fixing the amount of attorney's fees on the note sued upon, and set out in defendants' first cross-action. There was no issue as between the parties on that cause of action, and no defense offered or made as to the right of recovery of the defendants on the note and mortgage set out in defendants' first cross-action. The note there sued upon and set out in defendants' cross-petition provided for an attorney's fee of $10 and ten per cent. of the total amount due on said note. The court found and adjudged that there was due on such note the sum of $6,742.40, and allowed an attorney's fee of $350, and defendants complain of the insufficiency of the attorney's fee and cite the case of Continental Gin Co. v. DeBord, 34 Okla. 66, 123 Pac. 159, and the case of Cunningham v. Spencer, 111 Okla. 217, 239 Pac. 444. Defendants in error admit the correctness of defendants' contention as to attorney's fees, by reason of which admission and the holdings in the cases cited, the trial court should have allowed the amount of attorney's fees provided for in the note. We therefore hold and conclude that the judgment of the lower court, in so far as it sustained plaintiffs' petition on their first cause of action, is correct, and should not be disturbed; that judgment should have been entered on the mortgage as reformed, directing the same be foreclosed and the land sold unless the amount found due on the note secured thereby, without attorney's fees, were paid by the plaintiffs, and that the judgment of the court canceling said mortgage by reason of the tender was erroneous. We further conclude and hold that the judgment rendered in favor of the plaintiffs and against the defendants for the sum of $1,374.30 should not be sustained, and that the same should be set aside and judgment rendered for the defendants on that cause. We further hold that on defendants' second cause of action they were entitled to recover the attorney's fees provided for in the note, and that the court should have rendered judgment accordingly.

For the reasons herein stated, the cause is therefore reversed and remanded, with directions to enter judgment in accordance herewith.

BENNETT, TEEHEE, REID, and FOSTER. Commissioners, concur.

By the Court: It is so ordered.