Note.—See under (1) 26 R. C. L. p. 1067 et seq.; 5 R. C. L. Supp. p. 1438; 6 R. C. L. Supp. 1581. (2) 38 Cyc. p. 1578.

---

## McKAY et al. v. KELLY.

No. 17814. Opinion Filed Jan. 10, 1928.

Rehearing Denied March 20, 1928.

(Syllabus.)

1. **Appeal and Error—Review—Sufficiency of Evidence in Equity Case.**

In a case of equitable cognizance the appellate court will examine and weigh the evidence, but the findings and judgment of the trial court will not be disturbed on appeal, because of the insufficiency of the evidence, unless it is made to appear that such findings and judgment are against the clear weight of the evidence.

2. **Mines and Minerals—Mining Partnership—How Formed.**

A mining partnership is not based upon any agreement, either express or implied, but arises from the relation of the parties independent of a purpose to form a partnership when two or more cotenants unite and co-operate in the development and operation of a mine or a mining claim by each one paying his proportionate part of the expenses and. receiving his proportionate part of the profits or bearing his proportionate part of the losses.

3. **Same—Lien on Partner's Share for Overadvancement in Development of Land.**

A member of a mining partnership who advances more than his share of the money to operate or develop land has a lien on his partner's share to the extent of his overadvancement on final accounting.

4. **Equity—Jurisdiction to Administer Complete Relief.**

Where a court of equity has obtained jurisdiction of a controversy for any purpose, it will retain jurisdiction for the purpose of administering complete relief, and it may to this end determine purely legal rights which otherwise would be beyond its authority.

Error from District Court, Creek County; Fred A. Speakman, Judge; T. L. Blakemore, Referee.

Action by Thomas C. Kelly against Margaret C. McKay and Margaret C. McKay, guardian of Francis M. McKay, and Francis M. McKay. Judgment for plaintiff, and defendants appeal. Affirmed.

Walker & Lewis and Gaylord R. Wilcox, for plaintiffs in error.

George L. Burke and Hughes, Foster & Ellinghausen, for defendant in error.

PHELPS, J. Thomas C. Kelly and Charles Craver were joint owners of an oil and gas mining lease covering property located in Creek county constituting the subject-matter of this litigation. They jointly took charge of the property covered by the lease and developed it by drilling four producing oil wells thereon, each bearing his proportionate share of the expenses and receiving his share of the profits. After completion of these wells Craver sold his interest in the lease to John McKay, and Kelly and McKay continued to jointly operate the lease and produce oil therefrom. McKay became mentally afflicted and his wife, Margaret C. McKay, one of the plaintiffs in error here, on behalf of her husband, and Kelly continued the operation of the lease for a time. John McKay was then declared an incompetent by the county court of Creek county and Margaret McKay was appointed his guardian and she, as such guardian, continued the joint operation of the lease with Kelly.

McKay then died, leaving as his sole heirs his wife, Margaret C. McKay, and his minor daughter, Francis M. McKay, who appear here as plaintiffs in error. Margaret McKay was then appointed guardian of said minor daughter, and continued the operation of said lease with Kelly. The lease was further developed by drilling additional wells thereon. A disagreement arose between the owners of the lease, and Kelly filed his action in the district court of Creek county, praying for dissolution of the partnership, partition of the property and for accounting, pleading that he had advanced from his own funds several thousand dollars for the operation and development of the lease and that Margaret C. McKay, on her own behalf and as guardian of her minor daughter, had refused to reimburse him for their proportion of the money so advanced, although it appears that the McKays had regularly received pay for their interest in the oil produced from the premises, such payments being made directly to them by the purchasers of the oil.

The court appointed commissioners to partition the lease, and they, being unable to partition the property in kind, in the ratio of the interest held by each of the three owners, divided it into two units, fixing the value of one unit at $25,200 and the value of the other unit at $12,400. and the interested parties mutually agreeing to take over said units at the appraised value thereof. Upon adjustment of the difference in value

between the interested parties, the court entered its judgment decreeing title to one unit in the plaintiff and the other unit in defendants, and proper conveyances were made. The accounting feature of the cause was continued and referred to Honorable T. L. Blakemore, as referee, to hear the evidence, make findings of fact and conclusions of law. The referee filed his report in the district court and after objections filed thereto by plaintiffs in error were heard, judgment was rendered in favor of Kelly and against the McKays for $3,198.86, which judgment was made a lien against that portion of the lease set over to plaintiffs in error, from which judgment plaintiffs in error prosecute this appeal.

Counsel for appellants present their assignments of error under four propositions, the first of which is that the evidence does not support the conclusions of the referee on the findings of fact and conclusions of law reached and is insufficient to support the judgment entered by the trial court. We think this assignment of error not well taken, for the reason that the rule in this jurisdiction is so well settled, that in cases of equitable cognizance the appellate court will examine and weigh the evidence, but will not disturb the findings and judgment of the trial court unless it appears that such findings and judgment are against the clear weight of the evidence, as to render extended comment or citation of numerous authorities unnecessary. First National Bank v. Elam, 126 Okla. 93, 258 Pac. 892.

As this cause presents both legal and equitable questions, we deem it not inappropriate to call attention to the language of this court in Brewer v. Oil Well Supply Co., 126 Okla. 108, 258 Pac. 866, when it said:

"* * * When a court of equity acquires jurisdiction over a certain property its power to completely determine and settle all controversy with respect to that property is complete and comprehensive. DeRoberts v. Town of Cross, 23 Okla. 888, 101 Pac. 1114; Mathews v. Sniggs, 75 Okla. 108, 182 Pac. 703."

It is further contended by appellant that the referee erred in his conclusions of law that a mining partnership existed between the parties hereto, and that the court therefore erred in approving this finding and rendering judgment accordingly, it being their contention that they were merely joint owners or cotenants and their relations did not constitute a mining partnership.

In Mills-Willingham, Law of Oil and Gas, page 274, it is stated:

"A mining partnership is not based upon any agreement, either express or implied, but arises from the relation of the parties independent of a purpose to form a partnership, and in spite of an express intention to the contrary, when two or more cotenants unite and co-operate in the development and operation of a mine or a mining claim." (Citing numerous authorities.)

Thornton on the Law of Oil and Gas, section 355, says:

"If two or more owners of a mine unite in working it, without any partnership agreement, the act of working it together creates a mining partnership; and the same is true of two or more holding interest in a lease of mining property. 'Whatever may be the rights and liabilities of tenants in common of a mine not being worked,' said the Supreme Court of California, 'it is clear that when the several owners unite and co-operate in working the mine, then a new relation exists between them, and, to a certain extent, they are governed by the rules relating to partnership. They form what is termed a mining partnership, which is governed by many of the rules relating to ordinary partnerships, but which has also some rules peculiar to itself, one of which is that one person may convey his interest in a mine and business without dissolving the partnership?' "

In Barrett v. Buchanan, 95 Okla. 262, 213 Pac. 734, in the first paragraph of the syllabus, this court said:

"Where tenants in common, co-operate in developing a lease for oil and gas, each agreeing to pay his part of the expenses and to share in the profits or losses, they constitute a 'mining partnership.'"

And in Kennedy v. Beets Oil Co., 105 Okla. 1, 231 Pac. 508, in the second paragraph of the syllabus, this court said:

"The principal distinction between a 'mining partnership' and an ordinary partnership is that in the former the delectus personae, or the right of a partner to say whether a new partner shall be admitted to the partnership, is absent. One of the most important results of' this distinction is that a mining partnership, unlike an ordinary partnership, is not dissolved where the interest of a partner passes to another person or persons, as on the death of the partner or the transfer of his interest."

It is true that there is no presumption of partnership from cotenancy nor even from the operation of a mining lease by cotenants (Gillespie v. Shufflin, 91 Okla. 72, 216 Pac. 132), but under the definition of a mining partnership, as reflected in the authorities above cited and quoted from, clearly a mining partnership existed between Kelly and Craver, and when Craver sold his interest to McKay, clearly the partnership continued, and when McKay died and his interest passed to his wife and daughter, plaintiffs in error here, we are forced to the conclusion that the mining partnership relation continued. If not, when did it cease?

It is suggested by counsel for appellants that the partnership was terminated in the fall of 1917 when Kelly paid Mrs. McKay the sum of $485.70, the amount she claimed due her as a balance on the lease operation account running over a period of time from 1915. Kelly claimed, however, that Mrs. McKay still owed him $513.53 on that account and that he paid her the $485.70 in order to avoid a lawsuit. The record shows that Mrs. McKay is a neice of Mr. Kelly and the desire to avoid a lawsuit between relatives is commendable. The referee found, however, that the payment of this money by Kelly constituted a settlement of their accounts up to that time, but from the record we conclude that they continued to operate the lease as before. We therefore reach the inevitable conclusion that a mining partnership existed between these parties, and the court committed no error in so finding.

It is further contended by appellants that, inasmuch as the guardian did not authorize the expenditure of funds for the operation and development of the lease, neither did the county court approve such expenditures on behalf of the minor, that Kelly is not entitled to be reimbursed for his expenditures from the minor's interest in the property. Counsel cite numerous authorities supporting this position; however, these authorities are cited upon the theory that no partnership existed between the interested parties and, in view of the court's holding and our approval thereof, that a partnership existed, these authorities are not applicable.

The minor was a partner, not by consent or contract, but by virtue of the interest she inherited from her deceased father in property which had been partially developed and which was being operated at the time she inherited such interest, and it was necessary because of the peculiar nature of the property that its operation and development be continued, and it was not more necessary for the guardian to specifically authorize the expenditure of the minor's funds for its operation and development, nor the county court to approve the same, than it would have been if the property had been a farm

with growing crops thereon, for the guardian and the county court to have ordered the crops cultivated or gathered.

Therefore, since a partnership existed and Kelly advanced money from his own pocket in behalf of the minor's interest as well as his own, under the rule laid down in Barrett v. Buchanan, supra, and Kennedy v. Beets, supra, he is entitled to a lien on her interest for reimbursement.

It is further contended by counsel for appellants that, as the partnership property was partitioned before final judgment on accounting and Kelly accepted his share of the property under the partition judgment, he thereby waived any further claim and is barred from asserting his demand for any reimbursement under the accounting judgment.

With this contention we cannot agree. The record is replete with evidence indicating an intention on the part of the parties hereto to not only partition the property but to adjust their differences on accounting. This is evidenced by the language used by the court in its partition judgment when it said:

"The adjudication of all other cost will await the final settlement of the accounting between the parties which is being had on a reference, and this cause is continued for further and final action on the said accounting."

Under the rule laid down in the second paragraph of the syllabus in Brewer v. Oil Well Supply Co., supra, we conclude that the court was vested with jurisdiction to fully settle the controversy between the parties as the trial court might find the law and equities demanded.

The judgment of the district court is, therefore, affirmed.

BRANSON, C. J., MASON, V. C. J., and HARRISON, LESTER, HUNT, CLARK, RILEY, and HEFNER, JJ., concur.