**MILLER et al. v. EXCHANGE NAT. BA OF TULSA.**

No. 27247. June 8, 1937.

Rehearing Denied Sept. 14, 1937.

ris & Maris, for plaintiffs in error.
. L. Hull, Chas. E. Bush, and Jas. E.
, for defendant in error.

[H]ELPS, J. This was an action to
er upon a promissory note in the sum
50,000 given by the defendant Alma
r England to the defendant Zack T.
r, secured by a real estate mortgage,
note had in turn been assigned by
T. Miller to the plaintiff as collat-
security for the payment of a note of
00 given by the defendant Zack T.
r to the plaintiff. No money judg-
was sought against Zack T. Miller,
was joined as a party defendant for
urpose of foreclosing any right which
s pledgor of the Alma Miller England
and mortgage, might have in the
aged premises, and in order to de-
ne the amount due on his note of
00. There was no controversy over
mount due on either note. Execution of
notes, and the assignment to plaintiff
ack T. Miller of the Alma Miller
and note and mortgage, were admit-
The trial court entered judgment in
of the plaintiff, and the defendants
1. The defendant Alma Miller Eng-
presents no argument upon appeal
than by reference to the brief of
efendant Zack T. Miller, and the is-
in this case are argued between
and the plaintiff.

defendant Zack T. Miller first urges
the judgment of the trial court is
st the clear weight of the evidence.
ontends that the weight of the evi-
was with his defense of failure of
eration for the execution of the
0 note. The theory upon which he
ded the action was that prior to
tion of the note he was not personal-
debted to the plaintiff, but that the
Brothers 101 Ranch Trust was in-
to plaintiff, and that the plaintiff
threatening to institute receivership
ankruptcy proceedings against the
trust, in which he owned a consid-
share, and that he executed this
assigning at the same time the $50,-
note in suit as collateral, for the
se of the plaintiff bank made by its
president that it would in any event
the filing of such action against the
trust for a period of one year
the date of his note; that the plain-

tiff bank had not kept the agreement, but
did file such action for the appointment
of a receiver, and said receiver was ap-
pointed, in a little more than six months
following the date of the agreement and
the execution of the note. He contends
that this was an oral agreement made by the
plaintiff with him at the time and on the
date when he signed said $89,300 note.
Therefore he contends that, since the
promise of the bank was not kept, which
promise was the consideration for which
he signed the note, the $89,300 note should
be canceled, and that likewise his assignment
to the plaintiff of the $50,000 note in suit,
which was merely collateral to the $89,-
300 note, should also be canceled and re-
scinded.

Considering the case on its merits, and
disregarding questions involving the parol
evidence rule, still the evidence does not
bear out the contention of the defendant.
The record clearly indicates the following
to be the facts: On and prior to February
6, 1931, which was the date of the $89,300
note and of the collateral assignment to the
plaintiff of the $50,000 note in suit, the
Miller Brothers 101 Ranch Trust was in-
debted to the plaintiff in the approximate
sum of $121,000 on five promissory notes.
The defendant Zack T. Miller owned about
one-third of the trust estate and was man-
aging it. The notes of the trust estate
were past due and the plaintiff bank had
been pressing Miller for payment, and had
been threatening to institute court proceed-
ings for that purpose. Miller on behalf of
the trust estate was at that time negotiat-
ing with certain interests in New York for
financial assistance. Miller fearing the
effect upon those negotiations of any suit
which might be instituted by the bank, ar-
rangements were made between him and the
bank whereunder he was to buy from the
bank the $121,000 face value notes for the
sum of $100,000, the bank agreeing to dis-
count them that much for Miller's personal
note if he would give the bank sufficient col-
lateral security for his said personal note.
However, before the execution of the agree-
ment, the trustee of the trust paid the bank
$10,700 on the indebtedness of the trust to
the bank, and accordingly the $100,000 pur-
chase price which had originally been agreed
upon was reduced to $89,300, the face
amount of Miller's note.

On February 6, 1931, the date of the
execution of the $89,300 note and of the
assignment of the $50,000 Alma Miller
England note by Zack Miller to the bank,

Mr. Thompson, vice president of the plaintiff bank, by prearrangement went to the ranch and there had an extended conference with defendant Miller and certain attorneys then representing him. Four or five persons were present during the negotiations. The bank, acting through Mr. Thompson, there assigned to Miller the notes of the trust estate which had been owned by the bank, and the consideration for the sale of said notes to Miller was Miller's execution of the $89,300 note to the bank. Miller then assigned back to the bank the notes of the trust estate which it had owned, as collateral for his $89,300 note. He also assigned as collateral the $50,000 note and mortgage which was the subject of this action. As further collateral he assigned the bank certain life insurance policies.

The $89,300 note which he gave the bank was to mature in six months. During the conference at the ranch and preceding his signing of the note, he contended that six months would not be long enough for him to get straightened out financially, and that he would need a year for that purpose. His testimony was (and this is the meat of his defense) that Thompson then and there made an oral agreement with him to the effect that, although the bank could not give him a year to pay the note on the face thereof, the bank would forego the filing of any court action against the trust estate, in bankruptcy or for the appointment of a receiver, for at least one year from that date. He testified that Thompson made this agreement orally, and that the bank thereafter did, within less than a year, institute such receivership action. But the evidence further discloses that Miller insisted upon this agreement being put in writing, and he stated on cross-examination that it was put in writing in the form of a letter from Thompson to him, written at that time, but that he had lost said letter. Being shown by plaintiff's attorney a carbon copy of a letter, he admitted that it was a true and correct copy of the letter of which he had been speaking. The letter reveals that the promise of the bank was, not that it would defer instituting any action, such as described by the defendant Miller, but that the bank agreed that if Miller would pay $40,000 on the note within six months afterward, the bank would surrender back to Miller the $50,000 note and mortgage which is the subject of the present action, and would also extend the $89,300 note

for an additional period of six mo It does not appear that said $40,000 paid to the bank by the defendant M The letter follows:

"February 6, 193
"Mr. Z. T. Miller,
"Ponca City, Oklahoma

"Dear Mr. Miller: Pursuant to our ment made coincident with the tion by you of a note to our Bank i sum of $89,300.00, dated February 6, and maturing six months after date hereby agree that upon the payment of $40,000.00 plus interest at 6% fron date of said note, to surrender to yo your order the $50,000.00 first real mortgage described in the promissory

"It is understood, however, that the $40,000.00 and interest must be paid t bank on or before six months from of said note.

"We further agree that on or the maturity of said $89,300.00 note i event you pay us $40,000.00 and in of said note in money, we agree to e the unpaid balance for an additional of six months.

"Very truly yours,
"Exchange National Bank of
"By Elmo Thompson, Vice Presi

We see no necessity of going into f detail in narrating the evidence. cross-examination of the defendant revealed grave weaknesses in the ments made in his direct examin and, furthermore, pleadings of his fil a former lawsuit not connected wit instant action admitted that there conditions attached to the promise bank to extend the note. The test of defendant Miller himself having weakened by such admissions, and the mony of his supporting witnesses vague and hazy and tending to make ible the testimony of Thompson, than to support the defense attempte are of the opinion that the trial cou correct in his implied finding of fact, effect that no such agreement ever e as that which was claimed by the defe The witnesses all stated that the v agreements which were made on the d the execution of the note were redu writing as they were made. In view probability that the agreement conc the one year feature was reduced to w and that such instrument when pr did not support defendant's contentio correctness of the judgment is f evident.

defendant Zack Miller further con-
that the trial court erred in refusing
jury trial. As stated above, the
of the note and mortgage in suit,
Miller England, did not deny execution
note and mortgage, nor the amount
Neither did the defendant Zack Miller
the execution of his note, nor the
due on that or the other note.
ntention was that the consideration
execution of his $89,300 note had
by reason of which the note should
celed, and he asked for an affirmative
le relief, namely, the cancellation of
te. Thus the relief sought both by
aintiff and by the defendant Zack
was equitable in nature. In Moore v.
, 77 Okla. 41, 186 P. 466, we said:

re, in an action on a promissory note
foreclose a mortgage executed to
payment of same, defendant admits
n of the note and mortgage and by
mplaint sets up a defense involving
lication of equitable doctrines, and
ffirmative relief that only a court of
can give, such defendant is not en-
a jury trial."

e body of that opinion, we further

n defendants admitted the execution
notes and mortgage, and by cross-
set up a defense and presented is-
olving the application of equitable
s and prayed a rescission of the con-
d cancellation of the notes sued upon,
ive relief that only a court of equity
, the issues of fact to be tried did
e concerning the execution or amount
he notes. The execution of the notes
een admitted and no issues made as
mount due, the money judgment was
idental to the issues presented by
ts' cross-petition, following as a
f course when the equitable issues
etermined against defendants, and
equitable issues presented by de-
' cross-petition the defendants were
tled to a jury trial."

ears that the defendant had less
the right of trial by jury than in
ase as Newbern v. Farris, 149 Okla.
P. 192, where the following pro-
ent was made:

plaintiff's cause of action depends
able jurisdiction of the court and
t pleads a counterclaim and set-off
g such issues as constitute an ac-
law triable by jury, this does not
he nature of the action, nor entitle
t, as a matter of right, to a jury
the issues arising therein."

The decisions of this court are uniform in holding that actions involving only equitable issues are not triable to a jury as a matter of right, and that if a jury is impaneled to try the same, its verdict can only be advisory to the court, which must itself determine the facts and the legal principles applicable thereto. Crawford v. Hemingway, 116 Okla. 192, 244 P. 198.

The judgment is affirmed.

OSBORN, C. J., and WELCH, CORN, and HURST, JJ., concur.