THE CASPER NATIONAL BANK, a corporation,

*Plaintiff and Respondent,*

vs.

C. H. WOODIN,

*Defendant and Appellant,*

and

E. J. HOUSEWORTH,

*Defendant and Respondent.*

(No. 2470; June 19, 1951; 232 Pac. (2d) 706).

For the defendant and appellant Woodin the cause was submitted upon the brief of John J. McIntyre and Curtis L. Harden, both of Casper, Wyoming.

For the plaintiff and respondent the cause was submitted upon the brief of William J. Wehrli of Casper, Wyoming.

For the defendant and respondent Houseworth the cause was submitted upon the brief of Edward E. Murane of Casper, Wyoming.

236

## OPINION

BLUME, Justice.

This action was commenced by The Casper National Bank, plaintiff, against the defendants C. H. Woodin and E. J. Houseworth to recover judgment on a note of $8000 hereinafter mentioned, together with interest

and attorney's fees, and to foreclose the mortgages also hereinafter mentioned. Houseworth filed a counterclaim against Woodin alleging in substance that he was an accommodation maker on the note; that Woodin was primarily responsible thereon and he prayed judgment accordingly, and also a judgment for $1524.37 for the item hereinafter mentioned. Trial was had to the court without a jury. The court entered a judgment for the plaintiff as well as a judgment for Houseworth against Woodin on the former's counterclaim. Woodin has appealed to this court.

The defendant Houseworth was a dealer in Ward La France trucks, and had one on hand in March, 1948. He wanted to sell it. He entered into negotiations for the sale thereof with the defendant Woodin who was engaged in the business of hauling oil field equipment and supplies. The price for the truck was to be the amount which Houseworth owed on the truck to The Casper National Bank which amounted to approximately the sum of $7000. The truck as it stood was not suitable for the purposes of the business of Woodin, and it was agreed that Houseworth was to equip the truck with a winch and other special equipment to be attached thereto at the cost of Woodin. The latter did not have the money to pay for the truck as it stood and the equipment to be specially attached thereto. So Houseworth and Woodin applied to The Casper National Bank to furnish the money for the sale price, plus $1000 for part of the cost of labor and material in connection with the special equipment to be attached to the truck as above mentioned. The bank agreed to loan this money upon condition of the execution of a note and mortgages. Accordingly, on March 16, 1948 Houseworth and Woodin made and executed to the bank a promissory note for the sum of $8000, due six months after date, and payable in monthly installments of $400 beginning

May 15, 1948. A provision for reasonable attorney's fees in case of suit on the note was included. To secure the note Houseworth made and executed to the bank a mortgage upon certain garage machinery and equipment, which is not a matter of controversy herein. To further secure the note the defendant Woodin made and executed to the bank a chattel mortgage upon the truck above mentioned. Houseworth on the same day, namely, March 16, 1948 delivered to Woodin a certificate of title to the truck, which certificate of title was filed by Woodin with the County Clerk of Natrona County, so as to enable him to execute the mortgage which he gave thereon. The mortgages contained the usual provision that in case of default the mortgagee might take immediate possession of the property mortgaged and sell the same according to law.

It seems that Houseworth and Woodin expected that the extra equipment which Houseworth was to put on the truck in question would take approximately 30 days. It turned out that it was difficult to get the material and the truck was not actually equipped until shortly before June 11, 1948. The time that it took irked Woodin so about May 19, 1948 he notified Houseworth that the deal was "off" and that he would not accept the truck, and in his answer to the counterclaim filed herein by Houseworth, he asserted in substance that he merely took the naked title to the property on March 16, 1948; that it was expressly agreed between him and Houseworth that the latter deliver the truck to him within 30 days from March 16, 1948; that Houseworth failed to do so, so that he was not required to accept the truck after that time. Houseworth denied any such agreement. The cost of the special equipment as above mentioned was the sum of $2524.37 of which the bank had paid Houseworth the sum of $1000 leaving due for such special equipment the sum of $1524.37 for which House-

worth claimed judgment in his counterclaim, in addition to the claim that Woodin should be held primarily responsible for the indebtedness due to the bank.

With the thought in his mind that he was not compelled to accept the truck and was, hence, not responsible to the bank on the note above mentioned, Woodin set up in his answer to the petition of the bank that he went to the bank about June 11, 1948, informed the bank through Henry Choquette, cashier, that Houseworth had breached the agreement between them, and that he wished to be relieved from all responsibility to the bank; that Choquette answered "all right"; that Choquette requested payment on the interest on the note; that he, Woodin, paid $58 being half of the interest which was accepted by Choquette; that at that time he, Woodin, transferred the title to the truck to the bank which was accepted by the cashier and that he was accordingly no longer responsible to the bank.

On April 14, 1949 the parties, through their respective attorneys, agreed that the truck in question might be sold at a private sale for the best price obtainable and that proper title to it, with a certificate of acknowledgement by Woodin completed, should be delivered to the purchaser. The truck was sold on June 28, 1949 netting the sum of $4675 which was credited on the note above mentioned. That left unpaid at the time of the trial the sum of $3984.84. The court allowed the sum of $500 as attorney's fees to plaintiff's attorney and entered judgment in favor of plaintiff against both defendants for the sum of $4448.84 and ordered the chattel mortgage given by Houseworth to be foreclosed. The court also found that the obligation due to plaintiff was the primary obligation of Woodin; that there was due Houseworth from Woodin for equipping the truck a balance of $1524.37 and gave judgment to Houseworth upon his cross-petition against Woodin for

that amount, plus a judgment for $3984.84 "comprising the principal and interest now due" on the notes above mentioned making the total judgment in favor of Houseworth, namely the sum of $5473.21.

From that judgment in favor of the plaintiff, as well as from that in favor of Houseworth, the defendant Woodin, as already stated, has appealed. Houseworth did not appeal.

The main contention of the appellant as against the bank is in substance that there was an accord and satisfaction. The evidence in that connection is very meager. It appears that on June 11, 1948 when Woodin went to the bank he delivered to its cashier the certificate of title. The cashier testified that the bank never acquired title by transfer from Woodin. It was merely used subsequently for the purpose of giving the title to the purchaser who purchased the truck pursuant to the agreement of the parties. The only other testimony bearing on the point is that of Woodin as follows: "Q In June when you went to the bank at the time that you delivered the title of the truck to Mr. Choquette * * * what did you tell Mr. Choquette? A Well, when I took the title to the bank and gave it to Mr. Choquette, I told him that we were not considering taking the truck, that it was past the time I was supposed to have it and the summer was getting pretty well gone and it was going into the winter and I didn't want to do anything with the truck. And at that time, he told me, he said, 'Well, up to this time there is some obligation on your part', and that is when he accepted the $58 check for interest, cash interest, on the note and that was not a payment on the note."

In 1 C. J. S. 462 it is said: "An 'accord' is an agreement whereby one of the parties undertakes to give or perform, and the other to accept, in satisfaction of a

claim, liquidated or in dispute, and arising either from contract or from tort, something other than or different from what he is, or considers himself, entitled to; and a 'satisfaction' is the execution, or performance, of such an agreement." In 1 C. J. S. 473 we find the following: "Except where a statute otherwise provides, * * * an accord and satisfaction, like any other contract, must, in order to be valid and effectual, be founded upon a proper consideration, and where there is no consideration, the accord is nudum pactum, and so invalid and unenforceable. The consideration may present itself in any of numerous different shapes or guises, but in some form or other it must be present—there must be either some advantage, or presumed or assumed advantage, accruing to party who yields his claim, or some detriment to the other party." In 1 C. J. S. 476 we find the following: "To constitute a valid accord and satisfaction, it is essential that what is agreed to be given or performed shall be offered as a satisfaction and extinction of the original claim or demand, that is, that the debtor shall intend it as a satisfaction of such demand, and that such intention shall be made known to the creditor in some unmistakable manner, or that the offer be made in such wise or be accompanied by such acts and declarations as to amount to a condition that if the thing offered is accepted, it is accepted in satisfaction, and such that therefrom the creditor is bound to know or understand such intention and to recognize the existence of such attached condition; and it is equally essential that the creditor shall accept the thing given or agreed with the intention that it shall operate, in accordance with the debtor's intention, as a satisfaction. Both the giving and the acceptance in satisfaction are thus essential requisites, and if either be lacking there can be no accord and satisfaction." In the case of Graham vs. New York Life Ins. Co., 182 Wash. 612, 47 P. 2d 1029 the court said among other things: "To

create an accord and satisfaction in law, there must be a meeting of minds of the parties upon the subject and an intention on the part of both to make such an agreement. * * * An accord and satisfaction is founded on contract, and a consideration therefor is as necessary as for any other contract. * * * Where the debtor pays what in law he is bound to pay and what he admits that he owes, such payment by the debtor, and its acceptance by the creditor, even though tendered as payment in full of a larger indebtedness, do not operate as an accord and satisfaction of the entire indebtedness, because there is no consideration therefor."

Let us examine the situation in the case at bar in the light of these rules of law. The transaction in the bank, if such it may be called, seems to have been very largely a one-sided action, Woodin shoving the certificate of title across the counter and substantially telling the cashier that he was absolved from all responsibility to the bank, rather than attempting to come to an intelligent agreement in that connection. True, the action of the cashier in asking for half the interest due would hardly be appropriate to the occasion, but it was probably due to the fact that he was given but little time to think and was taken by surprise. It does not appear that the interest was paid upon condition that the whole indebtedness should be released. It was paid because the cashier asked for it. And as above stated, payment of what was to be paid in any event cannot be set up as a payment in full of the whole indebtedness. The certificate of title was not delivered upon any condition. It was handed to the cashier without condition in order to keep it whether he wanted it or not. In short, we cannot gather from the meager testimony in the case a clear, unequivocal, intelligent, bilateral agreement that the total indebtedness due to the bank should be discharged. We are here dealing with a note signed by two parties.

Houseworth was but an accommodation maker. He was, in effect, but a surety with Woodin as the principal. It is said in 50 C. J. 109 that: "The surety must be dealt with by the creditor or obligee in fairness and good faith." In 50 C. J. 183 it is stated that: "The general rule is that the release of the principal debtor, without the consent of the surety, releases the surety." We need not press the investigation as to what exact effect an accord and satisfaction herein claimed would have had upon the obligation of Houseworth. It would, at least, have given rise to controversy. We cannot assume that Choquette was entirely unaware of that fact, and it should be taken into consideration in determining whether it is reasonable to believe that Choquette entered into any such agreement as claimed by Woodin. We think that the trial court was fully justified in finding the absence of an agreement constituting an accord and satisfaction.

Counsel for the appellant claim that the truck in question here was delivered to the bank in satisfaction of the note here in controversy, and they cite us to the rule stated in 1 C. J. S. 487 where it is stated: "It was apparently first laid down by a case in the time of Coke * * * and has subsequently been treated by most authorities as settled law, that an accord and satisfaction of a claim or demand, whether liquidated or unliquidated, may be, and, where the parties so intend or agree, is effected by the transfer and acceptance of property." Counsel also cite some of the cases cited in the text. Without analyzing these cases, they are, we think, distinguishable from the case at bar. The case of Citizen's State Bank vs. Carmody, 43 S. D. 195, 178 N. W. 578 cited in the text and by counsel will be mentioned hereafter. In this case it appears indisputable that the physical possession of the truck was never delivered to the bank and never came into its hands. Counsel for

Woodin seem to think that the delivery of the certificate of title to the bank was sufficient delivery of the property. Before Woodin went to the bank, he had signed the certificate, supposedly, (though not shown) where the certificate provided for an assignment. The name of the bank was never inserted therein as assignee, nor was the cashier requested to insert its name. A good assignment was not complete until duly acknowledged. While the cashier was a notary public, he was never asked to acknowledge the signature of Woodin or to sign a certificate to that effect. The trial court was not, we think, bound to find that any property was delivered to the bank in discharge of the obligation of Woodin to the bank.

Even if delivery of the certificate of title to the bank in the manner hereinabove mentioned could be construed as a constructive delivery of the truck to the bank, still we think that there was not any consideration for an accord and satisfaction herein claimed by Woodin. It is clear, we think, that the payment of $58 was not sufficient for that purpose since Woodin owed that in any event. *"Where debtor merely does what he is already bound to do,* there is no consideration to support an accord and satisfaction." 1 C. J. S. 476, Section 4. Did the delivery of the certificate of title, then, constitute a consideration? It has been held that an agreement for accord and satisfaction is supported by sufficient consideration when it is agreed that the mortgagee of real estate shall take immediate possession of the property, and, when, in the absence of such agreement, the mortgagor would have been entitled to hold the property for over a year after foreclosure. Gilson vs. Nesson, 198 Mass. 598, 84 N. E. 854, 17 L. R. A. N.S. 1208. See 1 C. J. 551. The case of King vs. Brewer, 121 Mich. 339, 80 N. W. 238 is similar. A syllabus in Mortgage Purchase & Sales Co. vs. Williamson, 55 Ga.

App. 92, 189 S. E. 293 is as follows: "Although creditor under security deed is entitled to maintain ejectment to obtain possession of property from debtor after default, and instrument may expressly give creditor right after default to enter upon premises and collect rents and profits as well as right to sell, voluntary giving up of possession and of all claim and defense without constraint of any proceeding under contract or statute may afford basis of valid satisfaction of debt, where debtor's agreement had been executed." The case of Biggers vs. Ingersoll, 236 Ala. 646, 184 So. 478 cited to us by counsel for plaintiff seems somewhat inconsistent with the foregoing cases. In that case it was held that for a mortgagee of real estate to take possession pursuant to agreement with the mortgagor and collect the rent thereon prior to foreclosure, did not furnish consideration for an accord and satisfaction of the mortgage. The court stated in part: "What was done conferred no new right, but was only a recognition of the legal right already existing in the mortgagee. The mortgagor abstains from doing nothing she had a right to do. There was no change in the status of either party. Such being the case, the transaction is unsupported by any consideration. 1 Corpus Juris 551; Gilson, Adm'r, vs. Nesson, 198 Mass. 598, 84 N. E. 854, 17 L. R. A., N.S., 1208." The case is based on the theory that the legal title passed to the mortgagee upon the execution of a mortgage. That is not true in this state. A mortgage on real estate is merely a lien. Stryker vs. Rasch, 57 Wyo. 34, 46, 112 P. 2d 570, Robinson Merc. Co. vs. Davis, 26 Wyo. 484, 187 P. 931, Slane vs. Polar Oil Co., 48 Wyo. 28, 41 P. 2d 490. And the mortgagor is entitled to redeem from a foreclosure within six months thereafter. Hence, it is doubtful that cases involving real estate mortgages are applicable herein. The situation in connection with the ordinary chattel mortgage, however, is different. There is no statutory period for redemption.

In Citizen's State Bank vs. Carmody, 43 S. D. 195, 178 N. W. 578 cited to us by counsel for the appellant, there was an agreement to the effect that the mortgagor would deliver mortgaged stock to the mortgagee and permit him to sell the same without the expense or formality of foreclosure of the mortgage and that in consideration thereof, plaintiff would accept the proceeds of such sale in full payment of the amount due on the note and would cancel and surrender the same to the mortgagor; in other words that plaintiff agreed to accept the mortgaged property in payment of the debt. The agreement was held enforceable. It does not appear in that case whether or not the mortgagor was in default. Nor was the question of consideration discussed.

We may, we think, accept the principle stated in the Alabama case of Biggers vs. Ingersoll supra to the effect that if the delivery of a certificate of title in this case did not change the status of either party, then the transaction claimed to constitute an accord and satisfaction must be held to be unsupported by any consideration. That is not, we think, inconsistent with the rule, if properly limited, that a debt may be discharged by the delivery of property. A more technically correct statement, as applied to the situation like that at bar, would seem to be that an indebtedness may be discharged when, pursuant to an agreement, the debtor delivers property in satisfaction to which the creditor would not be otherwise entitled, at least at that time. Obviously if a creditor is entitled to the property in controversy in any event, and at the time it was delivered, there would be no consideration for the creditor waiving any of his rights. See Alfred Struck Co. vs. Slicer, 23 Go. App. 52, 97 S. E. 455. The chattel mortgage in the case at bar provides that in case of default, the mortgagee may take immediate possession of the mortgaged property and sell the same according to law. Default existed in this case. The payment agreed to be made on

May 16, 1948 was not made. Hence, the delivery of the certificate of title, it would seem, added nothing to the right of the mortgagee unless it could be said that giving the certificate of title obviated the necessity of going to the expense of foreclosure, and unless it could be said that the waiving of such expense is a sufficient consideration for an accord and satisfaction. No cases directly on that point have been cited, and our search has revealed none unless it be the South Dakota case above mentioned. In the case at bar there was no agreement in connection with the foreclosure of the mortgage, or that the certificate of title should be taken so as to void the expense of foreclosure. And as already heretofore stated Houseworth was but an accommodation maker and the bank could do nothing to prejudice his rights, so that the only course, or at least the only advisable course, was to take possession of the truck and sell it according to law as the mortgage provided and this would mean at public sale. Hence, the delivery of the certificate of title did not, we think, add anything to the rights which the bank did not already have and could not have the effect of an accord and satisfaction.

Counsel for appellant argue that in any event Woodin should be entitled to credit for the value of the truck when the certificate of title was delivered to the bank on June 11, 1948 and that the only value shown herein was the purchase price plus the value of the additional equipment put thereon. That contention, however, we think, has been fully disposed of by what we have already heretofore stated.

We need not dwell at any length on the controversy between Woodin and Houseworth. The value of the material and labor for the additional equipment put on the truck according to the agreement of the parties is not disputed. The amount is $2524.37 of which the sum of $1000 was paid to Houseworth by the bank out of the

$8000 loaned. Woodin claimed that the truck fully equipped was to be delivered to him within thirty days after March 16, 1948. Houseworth testified that no time was fixed, and that he used every effort to deliver the truck as equipped as soon as possible in view of the scarcity of the material and the difficulty of obtaining it. It would subserve no good purpose to review the testimony in this connection. There was conflict in the testimony. The trial court resolved that conflict in favor of Houseworth, and in accordance with our well known rule, we cannot interfere.

Two errors are assigned in connection with the exclusion of some testimony. We have examined these matters, and do not think that any prejudice resulted to the appellant.

One matter remains which has not been argued in any of the briefs; which may or may not be of importance, but which might or might not give rise to future misunderstanding and should accordingly be noticed and corrected. The total liability of Woodin as of the date of the judgment (without reference to costs) were the following items: Principal of note $8000; interest $623.84; attorney's fees $500; due to Houseworth $1524.37. This makes a total of $10,648.21. That is on the theory that Woodin was the owner of the truck in question and if that had been sold for the amount due from Woodin, nothing would further be owing by him. But it was sold only for the sum of $4675. Deducting that leaves the sum of $5973.21. But a judgment was rendered against him in favor of the plaintiff in the sum of $4448.84 and a judgment in favor of Houseworth for $5473.21 making a total of $9922.05. If he should pay both of these judgments the truck would have cost him $14,597.05. The amount of $9922.05 results by reason of the fact that the item of $3948.84 is contained in both the judgment in favor of the plaintiff and in that

in favor of Houseworth. The intention doubtless was that Houseworth should have judgment which includes that amount on the theory that he would satisfy the judgment in favor of the plaintiff without subrogation. See 60 C. J. 738, Note 87. The error herein is in the nature of a clerical error only. The judgments should be corrected imposing a total liability on Woodin as of the date of the judgment (aside from costs) of $5973.21 and no more. Counsel will doubtless be able to figure out the best way in which to effect that.

With this modification the judgments herein are affirmed.

*Affirmed.*

KIMBALL, C. J. and RINER, J.. concur.