**H. J. CHOPPING, Appellant (Defendant below),**

Joseph L. Johnson and Chopping and Johnson, Inc., a Wyoming Corporation, (Defendants below),

v.

FIRST NATIONAL BANK OF LANDER, Wyoming, a banking corporation, Appellee (Plaintiff below).

No. 3482.

Supreme Court of Wyoming.

Nov. 7, 1966.

John J. Spriggs, Sr., Lander, and John J. Spriggs, Jr., Washington, D. C., for appellant.

Smith & Vidakovich, and W. A. Smith, Lander, for appellee.

Before PARKER, C. J., and GRAY and McINTYRE, JJ.

Mr. Justice GRAY delivered the opinion of the court.

Plaintiff commenced an action against the defendant, H. J. Chopping, and others to recover judgment on a note in the sum of $40,000 and to foreclose two mortgages alleged to have been executed and delivered to plaintiff by the defendant Chopping as security for such indebtedness. Upon trial of the case with a jury present a verdict was returned for the defendants and judgment was entered in accordance therewith. On motion for judgment notwithstanding the verdict, or in the alternative for a new trial, the trial court set the verdict and judgment aside on the grounds that the findings of the jury were advisory only; were not supported by sufficient substantial evidence; and were contrary to the weight of the evidence. Accordingly, judgment was entered for plaintiff and the defendant Chopping appeals. The trial court, in the alternative, also granted a new trial, but we find it unnecessary further to notice that phase of the case.

The principal claim of error advanced by defendant is that the verdict of the jury was sustained by sufficient substantial evidence and could not be set aside. Inherent in defendant's argument is the premise that defendant, as a matter of right, was entitled to a jury trial of all factual issues. In fact, counsel for defendant apparently had so much confidence in his position that he has neglected even to mention any number of matters present in the record that give us concern in disposing of the critical question. Because of some uncertainty in the record [1] perhaps we should proceed upon the basis that "the answer will depend upon the setting in which the issues are framed." Davidek v. Wyoming Investment Company, 77 Wyo. 141, 308 P.2d 941, 946.

By uncontroverted evidence the record discloses that defendant and others, with whom we are not concerned, executed the note above described on October 30, 1962. On the same day, as security for the note, the defendant executed and delivered a real estate mortgage to plaintiff covering two separate properties, which have been identified in the record as the "gravel pit" property and the "cafe" property. The note was payable in quarterly installments and was delinquent on or about March

1. In the trial of the case the trial judge seemingly viewed the proceeding as presenting both legal and equitable claims.

29, 1963. On that date the defendant executed and delivered to the plaintiff another real estate mortgage covering the property identified as the "lumberyard" property. As to this last transaction, it was the claim of the plaintiff that such mortgage was given as additional security for its loan. The defendant claims that an oral agreement with an officer of plaintiff was made at that time for settlement of defendant's indebtedness on the note whereby the defendant was to convey to plaintiff the "lumberyard" property and plaintiff, in turn, was to cancel the note and release the original mortgage. He claims further, however, that because of fraud and mistake the instrument intended as a deed was in form the 1963 mortgage which plaintiff sought to foreclose.

Turning to the pleadings, we find that plaintiff by its amended complaint alleged the execution and delivery of the note and mortgages and that no part of the note had been paid. Prayer was for judgment in the sum of $40,000 plus interest and attorney fees; that the mortgages be foreclosed and the proceeds applied in satisfaction of the judgment; and judgment for any deficiency. By a second claim the plaintiff asked that the original mortgage be reformed to include an additional lot constituting a part of the "cafe" property which by mistake had been omitted in the description of the mortgaged premises.

 The defendant's answer denied each and every allegation of plaintiff's complaint[2]; alleged that plaintiff was not the holder nor owner of the note; and by incorporating allegations of his counterclaim alleged payment of all indebtedness due. By way of counterclaim defendant alleged that the oral agreement above described was made and accepted by plaintiff; that plaintiff marked the note "Paid in Full"

and delivered it to defendant at the time the 1963 mortgage was executed and delivered to plaintiff; and that plaintiff had failed to release the original mortgage. By a second count it was alleged that the 1963 mortgage of the "lumberyard" property was executed by mistake and inadvertence on defendant's part inasmuch as he believed the same to be a deed. A third count contained the usual allegations for an action to quiet title to the premises covered by the original mortgage. Later the answer was amended to assert an alternative defense to the defense of mistake in that the 1963 mortgage was without consideration and void. The prayer of the answer was that the plaintiff take nothing by its complaint. The relief sought on defendant's counterclaim was for specific performance of plaintiff's oral agreement with the defendant; that the 1963 mortgage be reformed to constitute a deed and conveyance by defendant to plaintiff of the "lumberyard" property; and that defendant's title to the "gravel pit" property and the "cafe" property be quieted.

By reply to defendant's counterclaim, plaintiff denied each and every allegation thereof, and here again with respect to the defendant's third count we call counsel's attention to a violation of Rule 11(a), W.R.C.P.

On pretrial the issues raised by the pleadings were "SIMPLIFIED." Even though somewhat repetitious, in order that our disposition be understood, we quote verbatim a portion of the report that bears most directly upon the question being considered:

"1. The plaintiff Bank claims there is due said bank from H. J. Chopping, the principal sum of $40,000.00, with interest thereon at seven per cent per annum from

---

2. In view of other allegations admitting the execution and delivery of the note and mortgages such plea was contrary to the spirit of Rule 11(a), W.R.C.P., in that it was not a good faith intention to controvert the delivery and execution of

the instruments. Arena v. Luckenbach Steamship Company, Inc., 1 Cir., 279 F. 2d 186, 189, certiorari denied 364 U.S. 895, 81 S.Ct. 222, 5 L.Ed.2d 189; 1A Barron & Holtzoff, Federal Practice and Procedure, § 277, p. 151 (1960).

and after October 30, 1962, and attorneys fees in the sum of $5,000.00, all on a promissory note dated October 30, 1962, made and executed by said defendant payable to said bank.

"2. The defendant admits the execution and delivery of said note and the amount and interest rate thereof, but denies liability thereon, claiming:

"a. That the bank is no longer the owner and holder of said note; the same having been returned and redelivered by the bank to Chopping for valuable consideration on or about March 29, 1963; and

"b. ⸱ That the obligation evidenced by said note was fully compromised and settled by mutual agreement between the parties on March 29, 1963, whereby defendant agreed to and did convey or intended to convey the "Lumber Yard property" to the bank and the bank agreed to and did accept said conveyance in full satisfaction of said obligation. As a part of this defense, the defendant claims that the mortgage deed dated March 29, 1963, describing the "Lumber Yard property" should be reformed in accordance with said agreement so as to be effective as an absolute conveyance; it being the contention of Chopping that said mortgage was executed by mutual mistake and inadvertence of the parties."

The pretrial report concluded with the statement:

"All equitable issues pertaining to reformation will be submitted to the jury on an advisory basis by special written findings."

Perhaps we should also mention that at the close of the evidence the trial court amended the pleadings to conform to the proof. The record fails to inform us of the amendments made, but based upon the arguments of counsel we gather they were with respect to defendant's testimony that his signature on the 1963 mortgage was obtained by plaintiff's fraudulent concealment of the nature of the instrument.

Analysis of the foregoing leaves us with the very definite impression that there was no legal claim or issue that entitled defendant to a jury trial as a matter of right. Let us demonstrate to some extent why we think this is so.

Historically, an action to foreclose a mortgage was of equitable cognizance. That appears to have been recognized in this state by the provisions of § 3–703, W.C.S.1945—enacted in 1886 and now superseded by Rule 38(a), W.R.C.P.—wherein a creditor, in one action, was authorized to seek a judgment on the debt as well as foreclosure of the mortgage securing the same with the proviso that such proceeding should be treated as "a civil action for the recovery of money only." In other words, such action was to be treated as an action at law with the right of trial by jury. In Baldwin v. McDonald, 24 Wyo. 108, 156 P. 27, 32, without mention of the special statute, we noted that the same result had been reached in certain jurisdictions by court decision under provisions for jury trial substantially the same as our own, namely, "Issues of fact arising in actions for the recovery of money only * * * shall be tried by a jury unless a jury trial be waived, or a reference be ordered." Later, in Burns v. Corn Exch. Nat. Bank of Omaha, Neb., 33 Wyo. 474, 240 P. 683, 685, we held that the rule mentioned had no application in an action where the only relief sought was the foreclosure of a mortgage. Such an action was to be tried by the court without the intervention of a jury. Defendant bottoms his argument, however, on these two cases. In so doing we think his counsel have overlooked developments in the law of the States of Kansas and Oklahoma to which we referred in the Baldwin case.

In Larrick v. Jacobson, 139 Kan. 522, 32 P.2d 204, the plaintiff sought to recover judgment on a note and foreclosure of a mortgage securing the same. The defendants answered, admitting the execution of the instruments but denying liability on the grounds of fraud and misrepresenta-

tion. The defendants demanded a trial by jury which was denied by the trial court. The claim was that the defendant's wife had been induced to waive her homestead by false representations of the plaintiff. After remarking that the proceeding was "mainly a question of foreclosing a mortgage on a homestead," the court held that there was no error because it was "unquestionably a matter for the court only." 32 P.2d at 208. The same result was reached in Andregg v. Sparrow, 152 Kan. 744, 107 P.2d 739, 741.

In Gee v. Security Bank & Trust Co., Enid, 186 Okl. 477, 98 P.2d 922, 923, the court had before it a case quite similar to the instant case. It was there said:

"The answer and cross-petitions contained a general denial, but admitted the execution of the note, pleaded no consideration, alteration of the note after delivery, fraud in the procurement of the signatures and certain other defenses. Defendants sought cancellation of the mortgage as a cloud on their title, and for such other relief as deemed proper by the court.

"Defendants were denied a jury, and they charge error.

"The suit is one for the recovery of money and for that reason would ordinarily entitle defendants to a trial by jury as a matter of right, sec. 350, O.S. 1931, 12 Okl.St.Ann. § 556, but their cross-petitions seek relief that only a court of equity can grant, cancellation of the mortgage and quiet title to the premises involved. Moore v. Stanton, 77 Okl. 41, 186 P. 466. The rule is there stated as follows: 'Where, in an action on a promissory note and to foreclose a mortgage executed to secure payment of same, defendant admits execution of the note and mortgage, and by cross-complaint sets up a defense involving the application of equitable doctrines, and seeks affirmative relief that only a court of equity can give, such defendant is not entitled to a jury trial.'

"Foreclosure is an action of equitable cognizance; the defense here was equit-

able. Where both parties seek equitable relief, neither may demand a jury as a matter of right. Miller v. Exchange Nat. Bank of Tulsa, 180 Okl. 550, 71 P.2d 456. The trial court did not err in denying jury trial."

See also Luke v. Patterson, 192 Okl. 631, 139 P.2d 175, 180, 148 A.L.R. 679; Id., 196 Okl. 522, 164 P.2d 394, which again emphasizes the significance upon the rule stated in Baldwin of the admission of the execution of the note and mortgage and the assertion in the answer or the counterclaim of equitable doctrines upon which a defendant seeks affirmative relief. It was there held that such an "action is not triable to a jury as a matter of right, but remains purely equitable."

We have not as yet adopted the views expressed by the courts mentioned. We refrain from doing so here for the reason that this highly important matter has not been adequately presented in the light of the impact, if any, of our later adoption of Wyoming Rules of Civil Procedure and we can dispose of the question by another approach.

Consequently we turn to the other approach. As the proceeding stood at the close of the pleadings and before pretrial, the defendant was in the position of having admitted execution and delivery of the instruments declared upon by the plaintiff. True, he alleged that the plaintiff was not the holder or owner of the notes, but that was not a denial of the indebtedness. Furthermore, it is apparent from other allegations in the answer that such plea was directly related to and dependent upon the plea of settlement. The same thing is true of the plea of payment. With respect to the plea of the oral agreement in settlement of the indebtedness, we are not advised whether defendant intended to plead accord and satisfaction or compromise and settlement. If the first, he presented no issue of fact to be determined on the law side of the court for the reason that performance is an essential element of the defense and defendant by his own admission had not

performed. Casper Nat. Bank v. Woodin, 68 Wyo. 232, 232 P.2d 706, 709; Bizzell v. Bizzell, 247 N.C. 590, 101 S.E.2d 668, 676, certiorari denied 358 U.S. 888, 79 S.Ct. 129, 3 L.Ed.2d 115, rehearing denied 358 U.S. 938, 79 S.Ct. 322, 3 L.Ed.2d 310; 1 Am. Jur.2d, Accord and Satisfaction, § 2, p. 302. Also, we fail to see how the plea of compromise and settlement would lie in view of the fact that the plaintiff's claim was a liquidated claim. 15 Am.Jur.2d, Compromise and Settlement, § 2, p. 936. A further significant point with respect to the defense was that the defendant asked for specific performance of the oral agreement. That was relief which could only be granted on the equity side of the court.

■ This leaves for consideration defendant's claim for reformation. Grant of the remedy would achieve substantially the same result as the grant of specific performance. Yet reformation also is on the equity side of the court and does not afford a jury trial as a matter of right. Goodson v. Smith, 69 Wyo. 439, 243 P.2d 163, 175–176, rehearing denied 244 P.2d 805. Adoption of Wyoming Rules of Civil Procedure has not changed that basic concept. Smith v. Bear, 2 Cir., 237 F.2d 79, 86, 60 A.L.R.2d 1119.

We discern nothing in the pretrial that created any new or additional claim or issue. In fact any fair analysis of the report of the pretrial conference will disclose that the issues, if anything, were narrowed. The plea of payment by defendant was eliminated. The request for specific performance of the oral agreement was not mentioned. As we view it, there remained only the issues pertaining to reformation, and that we think was the view of Judge Sheldon, who held the pretrial conference. It will be noted that Judge Sheldon did not say there were issues to be tried as a matter of right with a jury present. He simply exercised his prerogative under Rule 39 (c), W.R.C.P., and provided for an advisory jury on the factual issues pertaining to the claims of both parties for reformation of instruments. If there was any

doubt about that so far as defendant was concerned, we think it was clarified by the concluding remarks of his counsel in his opening statement. Counsel there said:

"In effect then the prayer of Mr. Chopping is simply this, in the alternative he says, one and really totally, make the bank stick with their deal, make this mortgage deed into what it was supposed to be, namely, a deed, under the power of reformation of the Court find that fact exists so the Court can reform that deed and permit Mr. Chopping to deliver the property to the bank and require the bank to quit its claim against Mr. Chopping's property."

The only further development of the issues to be tried was the amendment of the pleadings at the close of the evidence which we mentioned above. But that accomplished nothing more than to inject into the proceeding the additional issue of fraud or inequitable conduct on the part of plaintiff as a basis for reformation of the 1963 mortgage. It was so treated in the special interrogatories submitted to the jury on defendant's equitable claim.

■ Under all of the foregoing circumstances it is difficult for us to understand, as we indicated at the outset, how the trial judge initially and in the trial of the case reached the conclusion that the answer and counterclaim of the defendant raised any issue which entitled defendant to a jury trial as a matter of right. From our review of the record we conclude the trial judge did so to give defendant the benefit of a doubt. Nevertheless, and even though we put aside the application of any general rule which we have heretofore followed when the action, strictly speaking, was in equity, it is clear that the "setting in which the issues are [were] framed" primarily required that the 1963 mortgage be reformed in order for defendant, with one minor exception, to succeed in the defenses raised. Therefore, a jury was not demandable as a matter of right, Davidek v. Wyoming Investment Company, 77 Wyo. 141, 308 P.2d 941, 946–947, and First Nat. Bank of Ada

v. Elam, 126 Okl. 93, 258 P. 892, 896, as the trial judge determined upon further deliberation after argument upon the post-motions. We hold that the trial court did not err in its ruling that the findings of the jury were advisory only. The trial court was free to adopt or reject the findings.

In this connection we might suggest that the trial court, under the circumstances of this case, would have been well advised to have gone further in its pretrial order and provided that the claims for reformation be tried first. A determination of that phase of the case, with the trial court as the ultimate trier of the facts, would have disposed of the litigation completely with the possible exception of defendant's alternative defense of lack of consideration, which incidentally was never submitted to the jury and which the trial court could and apparently did decide as a matter of law.

 We shall not belabor the question of the sufficiency of the evidence to sustain the trial judge's determination that judgment should be entered for plaintiff notwithstanding the verdict. The defendant's testimony concerning the oral agreement was wholly uncorroborated and contradicted by plaintiff's witnesses in every material respect. It is academic that we will not disturb a finding of the trial court based upon substantial conflicting evidence.

 One further point should be mentioned. Defendant contends that because plaintiff's post-motion, under Rule 50(b), W.R.C.P., was filed some ten days prior to entry of the judgment for defendant, the trial court was without jurisdiction to entertain or grant the motion. The rule provides in part:

"When a motion for a directed verdict made at the close of all the evidence is denied or for any reason is not granted, the moving party may move not later than 10 days after the entry of judgment to have the verdict and any judgment entered thereon set aside and to have judg-

ment entered in accordance with his motion for a directed verdict * * *."

It will be noted that although our rule is patterned after Rule 50(b) of the Federal Rules of Civil Procedure, certain changes have been made. Under Federal practice the motion must be filed "Within 10 days after the reception of a verdict." Under our practice, it will be noted, the motion is to be filed "not later than ten days after entry of judgment." The principal purpose of the change was to extend the time and to meet the contingency, often occurring, of delay in the preparation and entry of the judgment. Notwithstanding, defendant's counsel pounces upon the words "after entry of the judgment" and argues that plaintiff's motion was premature and therefore a nullity. No authorities are cited to sustain that proposition and we think none can be found. The very language used would seem to refute the argument. It does nothing more than place a limitation upon the time an unsuccessful litigant may attack a verdict by post-motion. The rendition of the verdict is the essential prerequisite to the filing of the motion. 30A Am.Jur., Judgments, § 295, p. 349. We have previously held that a motion for a new trial may be filed before judgment, Mitter v. Black Diamond Coal Co., 27 Wyo. 72, 191 P. 1069, 193 P. 520, 521, affirmed 28 Wyo. 439, 206 P. 152, and we are not persuaded that a different view should be taken of a combined motion under Rule 50(b).

The judgment from which this appeal was taken is affirmed.

Affirmed.

Mr. Justice HARNSBERGER, not participating.

Mr. Justice McINTYRE, dissenting.

It is my understanding that the decision of the majority in this case is predicated on the proposition that there stood for trial "only the issues pertaining to reformation." In my view this is factually incorrect.

The principal defendant in this litigation is H. J. Chopping. His answer to plaintiff's complaint contained these allegations:

"1. On or about March 29, 1963, defendant, H. J. Chopping, on behalf of himself and all of the other defendants in this action agreed to convey to plaintiff, title to what is known to the defendant as 'the lumber company property', more particularly described on Exhibit 'B' attached to plaintiff's complaint, in exchange for a complete release of all indebtedness owed by defendants to plaintiff.

"2. Plaintiff agreed to cancel all of such indebtedness in exchange for such conveyance to plaintiff of said lumber company property and plaintiff did thereupon cancel said indebtedness and delivered to defendant, H. J. Chopping, the evidence of such indebtedness, namely, a note, which plaintiff marked, 'Paid in Full', and thereafter plaintiff failed to release the mortgage which is Exhibit 'C' attached to plaintiff's complaint."

The pretrial conference report delineated and clarified the issues so that there could be no misunderstanding of Chopping's defense. For example, the report shows Chopping was claiming the bank was no longer owner and holder of the note; that the note was returned and redelivered by the bank to defendant Chopping on March 29, 1963, for a valuable consideration (that consideration being the conveyance of the lumberyard property); and that the obligation evidenced by the note was fully compromised and settled by mutual agreement between the parties on March 29, 1963, Chopping agreeing to convey the lumberyard property to the bank and the bank agreeing to accept such conveyance in full satisfaction of Chopping's obligation.

At the trial, Chopping's testimony agreed with the claim made on his behalf in the pleadings and at pretrial. He testified he was called to the bank to discuss his obligations and that he talked to Floyd Lower, an officer of the bank. He said Lower wanted payment. Apparently, however, since Chopping could not make payment, Lower asked for a new mortgage covering additional property which Chopping had mortgaged to a brother.

Chopping claims he told Lower he could not do what Lower was asking for, because of his brother's interest. Instead, according to his testimony, he offered to deed the lumberyard property to the bank for the release of the gravel pit and cafe property, the bank "to give me back my note." After some discussion between them and after Lower had thought it over, Chopping testified, Lower said: "I will take it."

After this agreement was reached, Chopping claims Lower had the new instrument prepared, handing it to Chopping to sign. Chopping says he signed his name on that, "what I thought was a deed." He then described in detail how Lower took his note out of the note jacket, stamped it as having been paid and handed it to Chopping, saying the bank would not bother him anymore.

He also described exactly how he folded the note, putting it in the pocket of his overalls. His testimony as to what happened to the note thereafter was that it went through the wash in his overalls and was destroyed. With respect to recording, Chopping testified Lower said he would record the new instrument and get the other one released.

According to Chopping, he heard nothing more from the bank after his transaction with Lower until a few days before the bank started suit. He claims Lower came to him at the time and said the bank officers were not satisfied with our deal and they were going to foreclose on the mortgage. When Chopping protested, saying he thought everything was settled and that Lower had given him back his note, he claims Lower merely replied that he did not come to discuss it—only to tell Chopping what was going to happen.

It is true both Chopping's answer and the pretrial conference report contained references to the fact that defendant claimed the mortgage deed given by him to Lower should be reformed in accordance with their

agreement. It is specifically provided in Rule 8(e) (2), W.R.C.P., that a party may state as many separate defenses as he has regardless of consistency and whether based on legal or on equitable grounds or both. Therefore, a pleading of a defense in reformation could not possibly take from Chopping the defense asserted to the effect that the obligation evidenced by the note was fully compromised and settled by mutual agreement—Chopping agreeing to convey the lumberyard property to the bank and the bank agreeing to accept such conveyance in full satisfaction of Chopping's obligation.

In addition to the manner in which issues were settled in pretrial conference, I think we must look at the fact that the court instructed the jury with respect to the issues involved in the case, in Instruction No. 2. The instruction deals entirely with the defense I have been averring to and contains no reference to the matter of reformation. This instruction in its entirety reads as follows:

"You are instructed that in this suit the First National Bank of Lander, Wyoming, is plaintiff, and H. J. Chopping is a defendant. The plaintiff Bank seeks a judgment of $40,000.00, with interest at 7 percent per annum from October 30, 1962, amounting to $6,898.83, and attorneys fees in the amount of $5,000.00; upon the promissory note dated October 30, 1962, and the foreclosure of the mortgage of the same date and the mortgage deed claimed by the Bank to have been executed and delivered as additional security on March 29, 1963.

"The defendant admits the execution and delivery of the original note and mortgage of October 30, 1962, and admits that he executed and delivered the instrument entitled Mortgage Deed of March 29, 1963, purporting to cover what has been referred to as the lumber yard property, but he asserts that the last instrument of March 29, 1963, was intended to be a deed of conveyance of the lumber yard property in settlement of all of the indebtedness represented by the note and that he was to have the cancellation of the note and indebtedness and the release of all of the original mortgage, asserting that there was an oral agreement made between him and Mr. Lower for the plaintiff Bank agreeing to these matters.

"The Bank asserts the note was lost inadvertently, but the defendant claims that it was stamped paid and delivered to him by Mr. Lower on March 29, 1963, in pursuance of the above agreement.

"You are further instructed that the burden is on the plaintiff bank to prove its contention that the note was lost by a preponderance of the evidence, and that the burden is upon the defendant to prove the claimed agreement and cancellation of the note by a preponderance of the evidence."

As further evidence that the case was tried on the issue indicated in Instruction No. 2, Instruction No. 5a must be noted. It submitted special interrogatories and instructed the jury to unanimously decide the answers to the specific questions. Each and all of the questions had to do with the defense I am talking about, and not a single one had to do with reformation.

It must be kept in mind that the jury not only found generally for defendants, but it answered the special interrogatories submitted to it with findings that Chopping's note had been returned to him; that there was an agreement with Lower in substance as claimed by Chopping; and that the note had not been lost while in possession of the bank.

If the considerations I have pointed to are not enough to indicate that the case was actually tried on an issue other than reformation, then I would refer to appellee's brief wherein the following statement is made:

"The sole issue of the trial, then, concerned whether or not an agreement as alleged by Appellant was made, and, if made, whether or not this constituted

payment in full of the obligation evidenced by said promissory note."

Without attempting to hold appellee to the statement that the "sole issue" was whether or not an agreement as alleged by appellant was made and whether this constituted payment in full of the obligation, I cannot escape the conviction that this issue was at least present, and that is sufficient to cause me to conclude that the findings of the jury should stand.

In determining whether the judgment entered pursuant to and in accordance with the verdict should have been vacated with judgment being entered for plaintiff notwithstanding the verdict, we should of course, according to appellate procedures, consider only the evidence favorable to Chopping and disregard the evidence favorable to the bank. For this reason I am not attempting to review testimony offered on behalf of plaintiff—but only to see whether there was substantial evidence to support findings of the jury.

Appellee's attorneys, in argument on appeal, have admitted the "issue is complicated" by the fact that the original promissory note could not be produced at the time of trial. They have pointed to testimony and evidence, in support of their contention, tending to show the bank did not know the whereabouts of the original note; that it was missing from the bank files; but that it had been in possession of the bank subsequent to March 29, 1963, when the transaction between Lower and Chopping took place.

This argument overlooks the fact that the jury had a right to believe and accept the testimony of Chopping and to disbelieve that offered on behalf of the bank. No doubt that is why, at the time of trial, the trial judge rejected a motion for a directed verdict in favor of plaintiff, saying:

"There is a sharp conflict in the evidence. If the Defendant is to be believed there was an agreement between the Defendant and the loan officer of the bank to settle the litigation for a conveyance of the lumberyard property—that is his testimony. I have no right to reform a matter by directed verdict where there is a dispute in the evidence."

In particular, the judge held it would be invading the province of the jury for him to say the truth and veracity of any particular witness had been impeached; and it is unthinkable that the court should undertake to resolve a factual dispute where there is evidence which he believes might warrant a contrary conclusion.

This line of reasoning is correct and unimpeachable. I confess I have had difficulty in trying to understand why the judge subsequently reversed himself and did what he had declared he could not do. I think his original holding on plaintiff's motion for a directed verdict was correct.

The express issue submitted to the jury was whether or not there was an agreement between Lower and Chopping to the effect that the instrument was delivered and accepted in full payment and satisfaction of the mortgage debt. It hardly makes for justice understandable to the public, if courts can submit such definite and positive questions to the jury as were submitted in this case, and afterwards take the position that it doesn't matter anyhow. The specific findings of the jury in this case were so factual that they should be conclusive on the court, regardless of whether we consider the case one in law or in equity.